**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard Wayne OCHOA, Defendant-Appellant.**

**No. 75–4160**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Dec. 6, 1976.

---

Douglas Tinker, Corpus Christi, Tex. (Court-appointed), A. Deniz Tor, Corpus Christi, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, George A. Kelt, Jr., Houston, Tex., Robert Berg, Corpus Christi, Tex., Asst. U. S. Attys., for plaintiff-appellee.

Before COLEMAN, GOLDBERG and GEE, Circuit Judges.

PER CURIAM:

Appellant Ochoa was convicted of assaulting a federal officer with a deadly weapon in violation of 18 U.S.C. §§ 2, 111, 1114. He appeals, arguing there was error in the selection of the jury panel and that in-court identification evidence was tainted by a previous illegal search. We find these contentions to be without merit and affirm the judgment of the lower court.

In June 1974, Drug Enforcement Administration Agent Eakes learned from an informant that a large supply of marijuana had just arrived in Corpus Christi, and that the informant could introduce Eakes to people willing to sell it. A meeting was arranged that day with appellant, who introduced himself as Lee, and Eakes bought a small quantity of marijuana from him for $20. This transaction lasted about twenty minutes. Subsequently Eakes arranged, by a phone call to appellant, to purchase an additional 100 pounds of marijuana that same evening.

Eakes picked up appellant in a pickup truck and procured some $6,000 to make the purchase. They then proceeded outside of town to the spot where the transaction was to take place. They got out of the truck. At this point Eakes was assaulted by appellant and a masked man, later identified as Johnny Salinas. Both were armed. Eakes was robbed. Salinas, apprehended almost immediately by Government agents who had been surveilling the scene, informed the agents that the man who got away was Lee Gonzalez and that he had been staying at Salinas' apartment. Shortly thereafter Salinas' apartment was searched pursuant to a warrant issued by a Texas state court. A driver's license and a military identification card with appellant's picture and true name were found in the search. An arrest war-

rant in appellant's true name was issued. Appellant was arrested on July 1, 1975.

At the conclusion of a suppression hearing the court ruled that the search was not legal because the warrant had not been issued by a court of record. Accordingly, it suppressed the seized driver's license and identification card. The court denied the motion to suppress identification testimony, however, since the Government had a car registration in appellant's name for the vehicle Salinas was driving when apprehended. Salinas also told the officers his friend was in the Navy. The court ruled appellant's true name would have been linked to his physical characteristics without the use of the identification cards.

During voir dire of the jury, appellant's counsel learned that certain of the jurors, because of prior jury service that term, had heard some of the same witnesses and the same prosecutor at other trials. Appellant sought unsuccessfully to inquire if they had found anyone guilty. He also sought to challenge them for cause. This request was also denied. Though initially denied, a question whether the jurors might have a predisposition to believe witnesses previously seen was later permitted.

### Limitation of Voir Dire

 Appellant's challenges for cause were based on alleged bias because of previous jury service. No specific bias was alleged as to any particular juror. Appellant relies on *United States v. Montelongo,* 507 F.2d 639 (5th Cir. 1975), for the proposition that the trial court must allow defense counsel to develop the nature and extent of the prior jury service of members of the jury panel. Appellant also asserts the applicability of *Casias v. United States,* 315 F.2d 614 (10th Cir. 1963), in which the dissent argues a concept of implied bias of jurors who have sat on previous similar drug cases during the same term of court.

*Montelongo* concerns limitation of voir dire questions to preclude "any opportunity to develop the nature and extent of the prior jury service of . . . the panel . . . ." 507 F.2d, at 639. It does not

control here, where the court made all inquiries requested by defense counsel except whether "they have found people guilty based upon these witnesses' testimony." In *United States v. Riebschlaeger,* 528 F.2d 1031 (5th Cir. 1976), we rejected the *Casias* theory and held that general allegations of bias and prejudice based on previous jury service in similar cases are insufficient grounds for challenging jurors. The trial court has broad discretion in controlling the manner and scope of voir dire. Federal Rules of Criminal Procedure 24(a). *United States v. Goodwin,* 470 F.2d 893 (5th Cir. 1972). Absent a showing of an abuse of that discretion, none may be implied. The court's questioning of the jurors and his charge adequately protected appellant's rights. The jurors were asked, for example, if they could weigh the credibility of the witnesses in the case independently and uninfluenced by the fact that some of them may have heard the same witnesses in a prior case. There was no disqualifying answer. In the jury charge, the court gave the standard credibility instruction only and there was no defense objection to this portion of the charge. This contention lacks merit.

### Attenuated Poison in the Fruit

 Appellant's other contention is that the discovery of his true identity, his subsequent arrest, and the in-court identification of him at his trial should have been suppressed as fruits of an illegal search violative of his Fourth Amendment rights. He argues the Government did not sustain its burden of showing an independent source of his identity.

At trial, Agent Eakes positively identified appellant as the man he had the marijuana transaction with, and as the man who assaulted him. Eakes had observed appellant at close range on two different occasions, for a period in excess of an hour. He positively identified appellant as his assailant when shown the identification cards, and again at trial. Agent Dracoulis was on surveillance duty and observed appellant at least four times during the course of the

transactions. He had a clear view of appellant's face and positively identified him. Appellant's true name was found on a bill of sale in the car Salinas was driving when apprehended. Salinas also stated appellant was in the Navy. This information was also independent of the search of the apartment.

The standard for reviewing identifications by photograph, set out in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), is whether the procedure was impermissibly suggestive and whether, if so, this created a very substantial likelihood of misidentification. The procedure here was suggestive. The next question becomes whether the identification was reliable in light of the totality of the circumstances even though the confrontation procedure was suggestive. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Bloodworth v. Hopper,* 539 F.2d 1382 (5th Cir. 1976).

Here there was no likelihood of misidentification. Both officers were positive in their descriptions of appellant. Both had an opportunity to observe him at close range. Both positively identified him at the confrontation. These in-court identifications were independent of the identification cards found tainted below. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Houltin,* 525 F.2d 943 (5th Cir. 1976).

Appellant's complaints of error in the selection of the jury panel and tainted identification are without merit. The judgment of the district court is

AFFIRMED.