UNITED STATES of America, Plaintiff-Appellee,

v.

George W. PRICE, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Jose MIRELES, Defendant-Appellant.

Nos. 77–5368 and 77–5388.

United States Court of Appeals, Fifth Circuit.

May 22, 1978.

Phillip Westergren, Corpus Christi, Tex., for Price.

J. A. Canales, U. S. Atty., John M. Potter, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., Robert A. Berg, Asst. U. S. Atty., Corpus Christi, Tex., James R. Gough, Asst. U. S. Atty., Houston, Tex., for U. S. in both cases.

Sherman A. Ross, Houston, Tex., for Mireles.

Before SKELTON *, Senior Judge, FAY and RUBIN, Circuit Judges.

FAY, Circuit Judge:

The defendants in the above-styled cases contend, *inter alia,* that the trial court committed reversible error in refusing to quash the jury panels on the basis of interim jury service in similar cases between the time the panels were selected and the commencement of the trials. We have concluded that although the disposition of this issue should be determined favorably to the defendants according to our recent pronouncements in *United States v. Mutchler*[1] and *United States v. Jefferson,*[2] each defendant is entitled to a new trial in any event due to the significant delay between jury selection and commencement of the trials, combined with the failure of the trial court to conduct supplemental voir dire prior to hearing the testimony.

## I. FACTS

A. The defendant in Case No. 77–5388, Jose Mireles, was indicted for conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846. On March 8, 1977, a number of cases, including the case of the defendant Price, were called for jury selection. Prior to selection of the jury, the defendant's attorney moved, along with the other defendants whose juries were being selected, to challenge the venire on the grounds of the exclusion of 18–22 year old individuals, extensive prior jury service, and the likelihood that individuals selected to serve as jurors in the defendant's case would serve on other juries in the interim period between selection and commencement of the trial. On March 9, 1977, after denial of the motion to quash, the jury was selected and directed to return on April 27, 1977, forty-nine days after selection, for commencement of the trial.

Prior to the commencement of the trial on the 27th, the defendant's attorney renewed his objections to the jury panel. At that time he requested that he be permitted to perfect the record concerning interim jury service by his statement into the record rather than through the introduction of the cards maintained by the clerk of the court on each individual juror. The government did not object. The trial court responded that this method of establishing a record of interim service would be satisfactory if the defendant's attorney could assure the court that the information was accurate. The defendant's attorney then replied that he would dictate the figures into the record while the clerk simultaneously conducted a corroborative examination of his records. The record reveals that eleven members of the jury which sat on the defendant's case served as jurors in at least one case during the interim period and seven members served on two cases during this period. The record, however, is relatively silent concerning the precise nature of the cases on which interim service occurred.[3] The defendant was subsequently convicted of the offense charged and sentenced to imprisonment for twelve years with a special parole term of three years.

B. The defendant in Case No. 77–5368, George Price, was charged in a four count indictment with possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2. Price's case was also called for jury selection on March 8, 1977. Before selecting the jury, Price's attorney joined in the oral motion to quash the venire. The trial court denied the motion, and, with a great degree of equivocation, stated that an opportunity to perfect the record concerning interim jury service may be afforded prior to the

---

* Senior Judge of the United States Court of Claims, sitting by designation.

1. 559 F.2d 955 (5th Cir. 1977), *opinion amended,* 566 F.2d 1044 (5th Cir. 1977).

2. 569 F.2d 260 (5th Cir. 1978).

3. The record does reveal that six of the jurors served on a criminal case on March 30, 1977, in which a verdict of not guilty was rendered, R. Vol. I, 191, and that one juror served on a criminal conspiracy case on April 21 and 22, 1977. R. Vol. I, 190.

commencement of testimony.[4] The parties then proceeded to select the jury.

This jury was instructed to reappear on April 21, 1977, forty-three days after being selected. Prior to commencement of the trial, the defendant's attorney renewed his motion to quash the jury panel on the ground of interim jury service and requested to introduce into the record certain substantiating stipulations. The trial court replied that the clerk's records were available to substantiate or refute the defendant's allegations concerning interim service and that no hearing on the issue would be held due to the tardiness of the allegations and the lack of a written motion. The defendant's attorney then reminded the trial court of the earlier indication that an opportunity to perfect the record would be afforded immediately prior to the commencement of the trial. The trial court stood by the refusal to permit further proceedings concerning the issue of interim service.[5] The defendant was convicted on all four counts and was sentenced to three years imprisonment on each count, counts two and three to run concurrently with count one, and count four to run consecutively with counts one, two, and three.

## II. THE JURY SELECTION AND SERVICE ACT OF 1968

Before analyzing the contentions of the parties, it is necessary to briefly review the

---

4. The trial court stated:

Well, when we get ready to start with the testimony, you will have an opportunity to go into that aspect of it, as far as the Court is concerned, you can ask me. I don't know whether I will let you do it at the time or not, but I don't want to deprive anybody of any objection or motion they have got with regard to these jurors. I realize it is a problem and you think it is a problem. I don't think it is near as serious as you all do, but I don't want to deprive anybody of their opportunity to object, but I have got to try these cases and I am going to try them, and as I say, if I am wrong, we will have to try a lot of people again, but if I don't, it is going to be months and the first thing you know I am going to be getting a lot of these, "Well, you know we argued about this question, but now the time has gone by and you can't try this guy because it is too late," so I am going to try them and if the Fifth Circuit says I am wrong, then we will try them again.

R. Vol. I, 142–143.

The Court later added the following:

Well, let me say this, Gentlemen, I will give you opportunity to prove your record at the time of trial. Right now I don't think there is any point in going into that because I probably wouldn't remember what you want me to do at that time, but when we get ready to go to trial, when we have got your jury in the box and the Government is going to call its first witness, then if you have any record that you want to make as far as your particular case is concerned, I will hear you, If I decide I am going to let you do it, we will do it. If I decide I am not going to let you do it, we won't do it, but I don't want to go into that now because that is something you all can raise at the time we actually call the case for trial and I don't think it is going to help any to raise that now.

R. Vol. I, 146–147.

5. The text of the colloquy was as follows:

THE COURT: Well, let me say this, Mr. Westergren. The Clerk's files in connection with juries are available as far as when the jury was chosen, how many jurors have sat how many times and all that sort of thing, and that has been raised I don't know how many times, but I guess eight or ten times in the last month or six weeks, and if you want to raise it, you are at liberty to do so and get whatever you wish to get from the clerk's office. It is a little bit late to start bringing it up at this stage of the game, but I'm not going to hold a hearing on it at this point.
MR. WESTERGREN: I understand, Your Honor, but if I may call the Court's attention to it orally, prior to selecting the jury, in chambers, the Court indicated that I have an opportunity at a later time to perfect the record and I have since had some conversations with Mr. Berg, reached an understanding with him that he will make certain stipulations, and I would like to state them into the record at this time.
THE COURT: Well, I am not going to—an oral motion, of course, is not good at this point in the proceedings, and the fact that I may have told you you would have an opportunity, it is not my obligation to follow you around and tell you, "Now, look, you had better make your objections properly." You have got to come back to the Court because I have got a lot of cases I try and I am on this bench almost every day and I can't look out for the defendant's attorney.
MR. WESTERGREN: I understand, Your Honor, but it was not your recollection that you told me I could reduce it to writing prior to trial?

R. Vol. I, 176–178.

jury selection procedure, and the attendant objections which may arise thereto, in order to cast the issues before this Court in the proper perspective.

The Jury Selection and Service Act of 1968, amending 28 U.S.C. §§ 1861–1869, 1871, was enacted to assure that grand and petit jury panels in federal court are selected at random from a fair cross section of the community.[6] The Act prohibits discrimination on account of race, religion, sex and national origin[7] in the selection of grand and petit jury panels, and directs the district courts to adopt and implement plans in accordance with specified guidelines to assure that the venire is randomly selected.[8] Additionally, the Act specifies the procedure to be followed in randomly drawing the names of prospective jurors from the master jury wheel and in the completion of the individual juror qualification forms.[9] The Act also deals with the following aspects of jury selection: qualifications for jury service; the summoning of jury panels and exclusions, excusals, and exemptions from jury service; maintenance and inspection of records compiled by the jury clerk or commissioner; and fees to be received by the jurors.[10] Furthermore, the Act sets forth the procedure to be followed in asserting non-compliance with the provisions of Title 28 governing jury selection.[11]

The foregoing discussion of the areas included within the parameters of the Jury Selection and Service Act of 1968 makes it clear that certain phases of juror selection and qualifications are not covered by the Act. For example, the Act does not encompass voir dire of the jury panel. The trial court is accorded broad discretion in determining the scope of voir dire, the content of specific questions,[12] and whether to question the jurors collectively or individu-

---

6. See United States v. Smaldone, 485 F.2d 1333 (10th Cir. 1973).

7. 28 U.S.C. § 1862.

8. 28 U.S.C. § 1863.

9. 28 U.S.C. § 1864.

10. 28 U.S.C. §§ 1865, 1866, 1868, 1871.

11. We have set out the applicable provisions in full below because the government has placed much emphasis upon these provisions in support of its contention that the defendants have not properly preserved various assignments of error involving the impaneling of the juries. Subsections 1867(a), (d), and (e) provide as follows:

(a) In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

(d) Upon motion filed under subsection (a), (b), or (c) of this section, containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence. If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the grand jury, the court shall stay the proceedings pending the selection of a grand jury in conformity with this title or dismiss the indictment, whichever is appropriate. If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with this title.

(e) The procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime, the Attorney General of the United States or a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title. Nothing in this section shall preclude any person or the United States from pursuing any other remedy, civil or criminal, which may be available for the vindication or enforcement of any law prohibiting discrimination on account of race, color, religion, sex, national origin or economic status in the selection of persons for service on grand or petit juries.

12. United States v. Rojas, 537 F.2d 216, 219 (5th Cir. 1976), cert. denied 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1971).

ally.[13] Although the trial court has the election to conduct the voir dire examination itself,[14] voir dire affords both the defense and the government the opportunity to select an impartial jury through the exercise of both peremptory challenges and challenges for cause. *See Swain v. Alabama*, 380 U.S. 202, 219–220, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Notwithstanding the broad discretion reposed in the trial court in conducting voir dire, it is nevertheless certain that voir dire is not within the ambit of the Jury Selection and Service Act. First, voir dire is not covered by the terms of any section of the Act. Second, by its very terms, 28 U.S.C. § 1867(a) provides that challenges on the ground of substantial failure to comply with the provisions of the title in selecting the grand or petit jury shall be made "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, *whichever is earlier* . . . ." (emphasis added). It is obvious that the commencement of voir dire is the cut-off point for challenges under the Act. Hence, objections to the conduct of the voir dire examination cannot be included within the terms of the Act.

■ The Act likewise does not address the issue of whether members of the jury panel are disqualified because of extensive jury service prior to the commencement of voir dire in the defendant's case. It is well settled in this Circuit that prior jury service during the same term of court alone is not sufficient to support a challenge for cause. A juror may be excused for cause because of prior service only if it can be shown by specific evidence that he has been biased by the prior service. *United States v. Riebschlaeger*, 528 F.2d 1031, 1032–1033 (5th

Cir. 1976), *cert. denied*, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976). For the present purposes, we wish to emphasize that if the *Riebschlaeger* standard is met a challenge based upon prior service may be maintained during voir dire as a challenge for cause,[15] and is not conditioned upon compliance with 28 U.S.C. § 1867(a) and (d).

■ Finally, and most important for the purposes of these appeals, the Act in no way addresses the issue of the propriety of jury service in the interim between jury selection and commencement of testimony in a defendant's case. The Jury Selection and Service Act deals with the creation of the jury wheel, random selection therefrom, and statutory qualifications, exemptions, and exclusions, and in no way purports to include within its ambit events transpiring subsequent to the commencement of the voir dire examination. Consequently, in order to avoid waiver and to properly preserve the issue of interim jury service for appellate review, the defendant need not comply with the requirements of 28 U.S.C. § 1867.[16] *See United States v. Eldridge*, 569 F.2d 319 (5th Cir. 1978); *United States v. Jefferson*, 569 F.2d 260 (5th Cir. 1978).

### III. MERITS

Both defendants contend that the trial court committed reversible error in refusing to quash the jury panels due to jury service by the panel members on similar narcotics cases in the interim between selection and commencement of testimony. We have recently had occasion to address the potential deleterious effects which interim jury service may have on the right to trial by a fair and impartial jury in *United States v. Mutchler*[17] and later in *United States v. Jefferson*.[18]

---

**13.** *United States v. Arlt,* 567 F.2d 1295 (5th Cir. 1978).

**14.** Fed.R.Crim.P. 24(a).

**15.** Either party can, of course, utilize a peremptory challenge to remove a prospective juror who has performed prior jury service in the event that the juror is not subject to challenge for cause.

**16.** As we stated in *United States v. DeAlba-Conrado*, 481 F.2d 1266, 1270 n. 5 (5th Cir. 1973), "By its terms 28 U.S.C. § 1867 applies only to challenges under the Act."

**17.** 559 F.2d 955 (5th Cir. 1977), *opinion amended*, 566 F.2d 1044 (5th Cir. 1977).

**18.** 569 F.2d 260 (5th Cir. 1978).

In *Mutchler*, testimony commenced nine days after the jury was selected. The defendant's counsel had exercised each of his peremptory challenges to eliminate jurors who had prior jury experience in narcotics cases. During the nine day interim, nine of the twelve jurors served on one or more similar drug cases. Six of the jurors sat on a similar narcotics case involving the same prosecutor and government witness. The defendants' motion to quash the jury panel on the basis of interim jury service was denied.

The Court, citing *United States v. Ledee*, 549 F.2d 990, 993 (5th Cir. 1977), first noted that:

> Peremptory challenges are worthless if trial counsel is not afforded an opportunity to gain the necessary information upon which to base such strikes.

559 F.2d at 958.

The Court then reasoned that although the trial court had conducted an adequate inquiry at voir dire to determine the extent of prior jury service, thus affording defense counsel the opportunity to make an informed exercise of peremptory challenges, "Permitting the selected jurors to serve in similar cases prior to appellants' trial, however, rendered the prior voir dire and peremptory challenges all but meaningless with respect to the issue of similar jury service." *Id.*[19] The Court rejected the concept of "collective sanitization",[20] whereby the trial court cleanses the effect of the interim service by a series of questions or admonitions addressed to the jury collectively.

In the exercise of peremptory challenges, it is essential that the defendant have accurate information concerning prior jury service. *United States v. Ochoa*, 543 F.2d 564, 566 (5th Cir. 1976); *United States v. Montelongo*, 507 F.2d 639, 641 (5th Cir. 1975). Interim service on similar cases can indeed have the foreseeable effect of rendering voir dire and the defendant's exercise of peremptory challenges meaningless. For this reason, the Court in *Mutchler* expressly held that "once a jury is struck, the designates cannot serve prior to trial in other cases similar in fact and in legal issue or in cases in which the same government witnesses testify." 559 F.2d at 960.

We have recently expounded upon the holding in *Mutchler* in the *Jefferson* case. In *Jefferson*, jury selection commenced on December 1, 1975. Defense counsel did not request that the trial court question the prospective jurors concerning prior jury service at that time, nor did the record indicate that peremptory challenges were exercised on the basis of prior jury service. The jury returned forty-nine days later for the commencement of trial. Defense counsel requested the trial court to conduct supplemental voir dire of the jurors regarding jury service in the interim period. The trial court denied the request and stated that such information was available in the records maintained by the clerk's office.

We noted in *Jefferson* that our holding in *Mutchler* was based upon the right to effectively exercise peremptory challenges, but further held that *Mutchler* establishes that "jurors with interim service in similar cases may be challenged for *cause.*" 569 F.2d at 262. Our interpretation of *Mutchler* was based upon several grounds. First, in *Mutchler* we reversed the conviction and held that the jury panel should have been quashed despite the fact that the defendant

19. In his classic, forthright style, my learned colleague, Judge Goldberg, stated that the effect of the interim service was as if the trial court had made the following statement to defense counsel at the voir dire:

> The court recognizes the significance of prior similar jury service and has elicited information on that subject for your use in making peremptory challenges. You must recognize, however, that no matter whom you select, a strong possibility remains that by the time of trial they will have had even more recent similar jury experience, perhaps involving some of the same government lawyers and witnesses that will participate in your client's trial. With this caveat in mind, go ahead and strike the jury now.

559 F.2d at 958–959.

20. 559 F.2d at 959.

had exhausted his peremptory challenges in striking jurors who had prior jury service. Second, *Mutchler* indicates that interim service in similar cases is absolutely proscribed, thus negating the necessity of determining the availability of peremptory challenges. Finally, we held that interim service is qualitatively distinguishable from prior service due to the proximity in time and the increased danger of prejudice, thus giving rise to a challenge for cause. *Id.* Because the record in *Jefferson* did not indicate the extent and nature of the interim service, if any, the case was remanded for further proceedings.

More recently, in *United States v. Eldridge,* 569 F.2d 319 (5th Cir. 1978), we held that an objection to the seating of the jury on the basis of interim jury service may be waived if not timely pursued. In *Eldridge,* the defendant's attorney moved to quash the jury panel at the time the jury was selected on the basis of the possibility of interim service, but failed to renew the objection immediately prior to the commencement of the trial. We held that the defendant's failure to make a record or object in any manner prior to trial constituted a waiver of the interim service issue.

■ We now turn to the two cases before this Court to determine the dispositions in light of *Mutchler, Jefferson,* and *Eldridge.* In No. 77–5388, *United States v. Mireles,* the defendant's attorney renewed his objection to the jury panel on the basis of interim jury service in similar cases immediately prior to commencement of the testimony. The defendant timely raised the issue of interim service,[21] and, as we have discussed

earlier in this opinion, the defendant was not required to comply with the procedure set forth in 28 U.S.C. § 1867 in order to raise this issue.[22]

The defendant's attorney was given permission by the Court to establish the record concerning interim service by his statement into the record rather than through use of the clerk's records. The government failed to object to this procedure. The statement of the defendant's attorney revealed that eleven of the jurors served on at least one jury during the forty-nine day interim period, and that seven of the jurors served on at least two cases during this period. The record, however, is unclear as to the nature of the interim service. That is, the record does not clearly reveal whether the interim service concerned cases involving similar factual or legal issues, the same prosecutor, or the same government witnesses. Accordingly, our normal procedure would be to remand this case for such further proceedings as may be necessary to examine the precise nature of the interim service in order to determine whether the defendant is entitled to a new trial. A new trial would be mandated by *Mutchler* and *Jefferson* if the interim service of any juror involved a case concerning the same factual and legal issues or the same government witnesses.

We have concluded, however, that the defendant Mireles is entitled to a new trial independent of the examination into the nature of the interim service and the potential *Mutchler* violation. Forty-nine days elapsed between jury selection and the commencement of testimony. Events occurring

---

21. *United States v. Jefferson, supra,* at 263.

22. Furthermore, the fallacy in the government's contention that the defendant is required to comply with 28 U.S.C. § 1867 in order to challenge the panel on the basis of interim service is apparent from the text of the government's brief. The government makes the following contention:

> Thus, appellant's original motion to quash actually concerned jury service in the past four years and was premature as to the issue of interim jury service that had not yet occurred and was mere speculation. Further, his motion to quash on the day of trial for the

> first time purporting to show interim service was untimely.
> Brief of Appellee at 11.

We agree with the government that a challenge to the jury panel at voir dire on the basis of interim service may be premature. However, it is patently frivolous to contend that a motion to quash on the basis of interim service prior to trial, after the interim service has taken place, is untimely. Additionally, this is precisely the time that the trial court specified as proper for the consideration of the issue of interim service. R. Vol. I, 146–147.

during such a significant delay may have substantial effects upon the personality or preconceptions of the jury and seriously dilute the effectiveness of the prior exercise of peremptory challenges. We pointed out at length in *Mutchler* the deleterious effects which interim jury service may engender, and feel that the *Mutchler* rationale may apply with equal effect in cases involving extensive delay between jury selection and trial.

Additionally, the lives of the individual jurors may be affected in a multitude of ways during a forty-nine day delay. For example, narcotics, violence, or other unlawful activity may touch the lives of the jurors, their families, or friends. A juror may be a victim or a witness of crime or become associated with a victim or witness during this period. We only cite specific examples to illustrate that a person's beliefs and prejudices can drastically change during a lengthy expiration of time. We cite experience and human nature as authority.

■ We hold today that in order to assure the effective exercise of peremptory challenges and to assure that challenges for cause are available when the parties are so entitled, the trial court has an obligation, after any significant delay between the selection of the jury and commencement of trial, to conduct supplemental voir dire to determine whether any events have transpired during the delay which may have caused the formation of preconceptions concerning the case at hand, or of which the attorneys would simply be entitled to be advised in order to effectively exercise peremptory challenges. Additional peremptory challenges or challenges for cause should be afforded to the parties if permissible.[23]

■ The failure of the court below to conduct supplemental voir dire after the forty-nine day delay constitutes reversible error. Accordingly, the conviction of the defendant Mireles is reversed and this case is remanded for a new trial.[24]

In No. 77–5368, *United States v. Price*, the defendant's counsel likewise raised the issue of interim service in similar cases immediately prior to commencement of the trial, forty-three days after the jury was selected. The trial court concluded that the defendant's objection was untimely and accordingly refused to permit the defendant's counsel to perfect the record on this issue. *Jefferson* teaches that the defendant's motion was indeed timely. Our earlier discussion reveals the conclusion that the defendant need not comply with the requirements of 28 U.S.C. § 1867 in challenging the jury panel on the basis of interim service, and we therefore will not repeat what was said there.

■ The record in the case at bar is completely silent as to the nature of the material concerning interim service which the defendant's counsel wished to present, and, in accordance with *Jefferson*, we would ordinarily remand this case to the trial court for such factual determinations as may be necessary to rule on the issue of interim service. We have concluded, however, that the defendant Price is entitled to a new trial in any event because the trial court failed to conduct supplemental voir dire following the significant delay between jury selection and trial. The conviction of

**23.** We are not unmindful of the restrictions as to the number of peremptory challenges which may be afforded. This is a matter which the trial judges will be required to deal with in accordance with the law and the particular circumstances surrounding each specific case.

**24.** Because the defendant Mireles is entitled to a new trial, we need not deal at length with his contention that the trial court erred in denying his motion to quash the jury on the basis of extensive service by members of the venire prior to the voir dire in this case. In *United States v. Riebschlaeger*, 528 F.2d 1031, 1032–

1033 (5th Cir. 1976), *cert. denied*, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976), we held that prior service alone is insufficient to support a challenge for cause. The defendant must establish by specific evidence that the prior service biased a particular juror. *Jefferson, supra*, at 261. The defendant has failed to carry this burden. The defendant does not contend that the trial court failed to conduct adequate inquiry into prior jury service as required by *United States v. Montelongo*, 507 F.2d 639 (5th Cir. 1975).

the defendant Price must therefore be reversed.[25]

In *Mutchler, Jefferson,* and in the cases before this Court today we have recognized the potential shortcomings involved in the procedure of selecting the jury well in advance of trial. We only seek to assure that both the defense and the prosecution are afforded the right to trial before a fair and impartial jury selected on the basis of informed challenges by imposing the appropriate safeguard in cases involving significant delay. Our holding today is limited. We certainly do not envision an absolute rule requiring supplemental voir dire after any delay between jury selection and trial. Such an obligation only accrues after a *significant* delay.

The vagueness of the phrase "after any significant delay" necessarily vests much discretion in the trial court. This discretion, however, is always subject to review for possible abuse. We have no difficulty in placing delays of forty-three and forty-nine days in this category. Consequently, we do find an abuse of discretion requiring reversal and new trials in both instances.

Defense counsel had presented the issue of delay and interim service to the trial court on March 8 and 9, 1977. The trial judge announced that the matter would be taken up immediately prior to the commencement of the actual trial. At that time, counsel for both of these defendants attempted to explore the area of interim service. There was no *Eldridge* waiver and the efforts by defense counsel were timely.

If these cases add anything to our prior holdings in *Mutchler, Jefferson,* and *Eldridge,* it is that the selection of multiple juries in advance of a continuous series of trials has an added hazard. The passage of a "significant" period of time creates a concomitant duty to conduct supplemental voir dire to assure the meaningful exercise of both peremptory and cause challenges by the parties.

## IV. CONCLUSION

The convictions of both Price and Mireles are reversed and the cases remanded for new trials.

**REVERSED AND REMANDED.**

---

**25.** We therefore need not consider the defendant's numerous other assignments of error in any great detail as we do not foresee that the problems outlined in the assignments will necessarily arise on retrial. We will, however, comment briefly on several of the defendant's contentions.

The defendant asserts that the trial court erred in permitting the prosecutor to comment in final argument on the defendant's failure to call his wife to testify. In *United States v. Pariente,* 558 F.2d 1186, 1187 (5th Cir. 1977), we once again recognized the common law rule which permits spouses to refrain from testifying against each other without the consent of both. We also recognized in *Pariente,* however, that violation of the privilege is not reversible error per se and that in order to determine whether or not a conviction should be upheld where the marital privilege is relevant "it is necessary to balance the action of the prosecutor against the weight of the evidence." 558 F.2d at 1190. In the case at bar, although the comment by the prosecutor clearly violated the rule prohibiting such comment, the evidence of guilt was substantial. Hence, standing alone, the comment by the prosecutor prob-

ably would not merit reversal. We further note that the defendant's other assignments of error concerning the conduct of the trial are without sufficient merit to warrant reversal.

The defendant also contends that the trial court erred in failing to provide inspection or summarization of a confidential portion of the presentence investigation report and in refusing to attach the confidential portion to the record on appeal in a sealed envelope. At the outset, it is clear that Rule 32(c)(3)(A) of the Federal Rules of Criminal Procedure permits non-disclosure under certain enumerated conditions. In the companion cases of *United States v. Woody* and *United States v. Savant,* 567 F.2d 1353 (5th Cir. 1978), we noted that Rule 32(c)(3)(B) does not require summarization if the trial judge does not rely upon the undisclosed material in determining sentence. In the case at bar, the trial judge specifically stated that he was not relying upon the undisclosed information in the determination of the appropriate sentence. R.Vol.III, 9. Hence, the trial judge was under no duty to summarize the confidential material or to attach said material to the record on appeal.