**Oliver James WHITE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–81–0108–CR.**

Court of Appeals of Texas, Tyler.

Feb. 24, 1983.

Joe Cannon, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

COLLEY, Justice.

On October 21, 1976, appellant was convicted in the 183rd Judicial District of Harris County, Texas, of aggravated rape in Cause No. 246,849 on the criminal docket of said court on his plea of guilty. His punishment was assessed by the court at fifty years confinement in the Texas Department of Corrections. This conviction was based on an indictment returned by the Harris County Grand Jury on June 9, 1976, in said cause.

Appellant was sentenced in said Cause No. 246,849 on November 1, 1976. He appealed the conviction which was overturned by the Court of Criminal Appeals. *Oliver James White v. State,* 576 S.W.2d 843 (Tex. Cr.App.1979). The Court of Criminal Appeals held the indictment was void on grounds not pertinent here and ordered dismissal of the indictment.

Appellant was re-indicted for the same offense on March 16, 1979, by a Harris County Grand Jury and was brought to trial, pleaded not guilty to a jury and was convicted of aggravated rape and punishment was assessed by the jury at ninety-nine years. Sentence was duly pronounced on May 29, 1979, and appellant gave notice of appeal in open court on the date the sentence was pronounced. We affirm.

Appellant presents only one ground of error, as follows: "The trial court erred in permitting the in-court identification of the appellant because it [sic] tainted by irreparable misidentification." The ground is, of course, general and so recourse was had to appellant's argument which was necessary to understand the appellant's contention under said ground. Even in so doing we encounter only generalities and must indulge in some conjecture as to just what identification procedures utilized in this case by the police authorities of which appellant complains. One reason for this difficulty is obvious. The record shows that at no time, pretrial or otherwise, did appellant object to any identification of appellant by the prosecutrix. No motion to suppress the in-court identification by the prosecutrix was filed or urged. In fact the record

shows that appellant cross-examined the prosecutrix rigorously during the trial about the spread of five photographs which included three white males and two black males, from which the prosecutrix was able to first identify the appellant as one of the two black males who assaulted her. The in-court identification of appellant by the prosecutrix was positive and on cross-examination by appellant she stated that she had no doubt about appellant being one of the two men who raped and otherwise sexually abused her.

The evidence shows that the prosecutrix was abducted from her vehicle at gun point and that her blue jeans, panties and shoes were removed; her blouse pulled up over her face by one of the assailants before the first sexual attack by appellant. While riding in the back seat of the vehicle driven by the unknown confederate of the appellant, she pulled the shirt or blouse to one side and got a view of the profiles of both appellant and the other man. She was raped on several occasions and was finally transported by vehicle to a desolate place in Harris County on a gravel and shell road where the remainder of her clothing was removed by appellant. She was compelled to perform deviate intercourse (oral) on appellant while the other male had deviate intercourse (anal) with her. She stated she would never forget appellant's face. The men then dragged complainant across the street on her back where appellant raped her again. She testified she had been struck by both men several times, and suffered cuts on her face, head and back. Appellant and his companion then placed two automobile tires over the complainant, assaulted her further and left her in a ditch on the road, threatening again to kill her if she got up.

She testified that while she could not say that there was a full moon, that it was quite a bright night by reason of the moonlight and starlight and that she was in the company of the appellant for approximately twenty to thirty minutes on the last location mentioned above and that she got a clear view of his face. When she finally was abandoned nude by the assailants, she walked to a place of business near the scene and there someone called the police who came to investigate. One of the police officers who arrived at the scene about forty minutes after she was abandoned rode with the prosecutrix to the place where the final cruelties were inflicted upon her and that officer testified that he was able to distinguish the facial features of both the prosecutrix and his partner without any artificial light sources at the location.

In addition there is no question but what the description of appellant initially given to the police officers by the prosecutrix immediately after the rape occurred accurately described the appellant. And as heretofore mentioned her identification of the appellant at trial was certain and positive. She testified, and of course the nature of the offense supports her assertion, that appellant's face was for some length of time within eight inches of hers. The record shows that the prosecutrix attended at least three line-ups and viewed between seventy-five and one hundred photographs (mug shots, etc.) before she finally was shown and identified a photograph of the appellant. The record shows no conduct on the part of police officers or others which could possibly be construed as suggesting to the prosecutrix that one of the black males in the five photographs spread was in fact the one who raped her.

■ Employing the criteria enunciated by the United States Supreme Court in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), we conclude, in this case, that there is no likelihood of prosecutrix' misidentification of the appellant at trial because of her identification of appellant in the five photograph spread herein mentioned. She had ample opportunity to view the appellant and her attention was acutely focused on him because she was being sexually victimized by him. She had previously given an accurate description of his over-all characteristics, i.e., age, race, size and build; she was positive in her in-court identification and only three months elapsed between the date of the

offense and the date of the first identification of appellant by the prosecutrix from his photograph.

While we conclude that the photograph spread and prosecutrix' identification of the appellant therefrom was not impermissibly suggestive (although we do not understand why the State included three white males in the photographic spread) because two black males were shown. But even if this procedure (showing only two black males) was suggestive, it didn't create a substantial likelihood of misidentification by prosecutrix of the appellant at trial. Additionally we conclude from the record that in light of the totality of the circumstances in this case, the in-court identification of the appellant made by the prosecutrix was admissible because it was in fact very reliable. *U.S. v. Ochoa,* 543 F.2d 564 (5th Cir.1976); *Bermudez v. State,* 533 S.W.2d 806 (Tex.Cr.App.1976).

Appellant cites *Powell v. State,* 466 S.W.2d 776 (Tex.Cr.App.1971), for the statement that the "recommended" practice is to exhibit photographs to witnesses "separately and apart." *Id.* at 778, note 1. Not only is this a footnote, and therefore dictum, the court was referring not to the showing of several photographs, but to showing photographs to two witnesses at the same time.

Finding no reversible error, the judgment of the trial court is affirmed.