**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John E. CHAPMAN,
Defendant–Appellant.**

No. 86–3552.

United States Court of Appeals,
Eleventh Circuit.

March 2, 1989.

Rehearing and Rehearing In Banc
Denied April 20, 1989.

James J. Kennedy, III, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for defendant-appellant.

Michael A. Cauley, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellee.

Before TJOFLAT and EDMONDSON, Circuit Judges, and FLOYD R. GIBSON *, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge:

John Chapman was convicted of the December 31, 1985 armed robbery of the Meritor Federal Savings Bank in Lakeland, Florida. The evidence shows that at approximately 10:00 a.m. on that day a man wearing an army green stocking mask over his face and armed with a handgun entered the bank, approached a teller, and demanded cash. The robber removed approximately $400 in cash from the teller's drawer and approximately $21,000 in cash from the bank's vault and then left the bank.

On July 16, 1986, a jury found Chapman guilty of bank robbery pursuant to 18 U.S. C. § 2113(a), (d). The district court sentenced Chapman to 20 years in prison. Chapman now appeals his conviction, alleging: (1) that evidence was admitted at trial which violated his right to confront the witnesses against him; (2) that the same evidence was admitted in violation of the

---

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

rule against hearsay; (3) that the admission of his wife's out-of-court statements was error because she asserted her marital privilege; (4) that he was prejudiced by unfair inferences created at trial regarding his wife's refusal to testify; (5) that a sketch admitted into evidence at trial was obtained in an illegal search of his trailer; and (6) that the evidence adduced at trial was insufficient to sustain his conviction.

On April 7, 1986, an anonymous caller telephoned the Lakeland Police Department stating that she had information about a bank robbery that had occurred in the area in late December. The woman indicated that she had heard of some robberies on the radio and that John Chapman had committed the robbery in which the robber wore a green ski mask. The caller also identified Chapman's place of employment. This telephone call was taped and transcribed by the Lakeland Police Department. After that call, the police went to Chapman's residence and interviewed Chapman's wife. (Chapman was not living at the residence at that time). While interviewing Mrs. Chapman, the police determined that she was the anonymous caller. In her interviews with the police, Mrs. Chapman restated her belief that her husband had committed a robbery; stated that sometime in January 1986 she observed her husband remove a bag containing bound bundles of money from the vent in their trailer; stated that he had never taken his dog to a veterinarian as he alleged to have done on the day of the robbery; stated that he purchased two automobiles in the month after the robbery; and stated that he borrowed a ski mask from a relative on the day before the robbery. The conversations between Mrs. Chapman and the police were admitted at trial. The district court admitted both the tape and transcript of the phone conversation, and the statements made by Mrs. Chapman in her interviews with police were introduced through the testimony of the police officer who interviewed her. Mrs. Chapman did not testify at trial. The government called her to the stand and in open court she claimed her spousal privilege not to testify against her husband.

Other evidence offered against Chapman at trial included the testimony of the two bank tellers who were working at the time of the robbery. They testified that Chapman had been in the bank on the day before the robbery, that he looked suspicious at that time, and that his build, size, and voice tone were the same as the robber's. The district court also admitted a sketch seized by the FBI in a search of Chapman's trailer made during his arrest. The government alleged at trial that the sketch depicted Chapman's robbery plans. Testimony was received from Mrs. Chapman's aunt that Chapman had borrowed a ski mask from her which matched the description of the mask worn by the robber. The government elicited testimony from two car dealers from whom Chapman made cash purchases of automobiles in the month after the robbery. Also, an employee of the animal hospital where Chapman claims to have taken his dog on the morning of the robbery testified that Chapman had not been to the animal hospital on that day.

Chapman took the stand at trial and denied having committed this crime. He testified that he did not go to work on December 31, 1985 because he had to take his dog to the veterinarian. He also stated at trial that the cash he used to purchase two vehicles in the month after the robbery came from his savings over the prior year.

I. Discussion

A. Confrontation Clause

The primary argument raised by Chapman in this appeal is that the district court's admission of his wife's incriminating out-of-court statements violated his Sixth Amendment right to confront the witnesses against him because his wife could not be cross-examined at trial due to her assertion of her marital privilege. The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI. Essentially, this provision provides to criminal de-

fendants the constitutional right to cross-examine adverse witnesses. *See United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 841, 98 L.Ed.2d 951 (1988).

■ However, the right to confrontation is not absolute. This is because the question of the admissibility of hearsay evidence against a criminal defendant who has no opportunity for confrontation involves two very important but competing interests: the protection of the defendant's fundamental right to confront the witnesses against him, and the pursuit of the public's interest in the disclosure of reliable information that can lead to effective law enforcement. *See Ohio v. Roberts*, 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980); *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). These competing interests dictate that under certain circumstances the defendant's right to confrontation must give way to allow the admission of incriminating evidence even though such evidence cannot be cross-examined. Two requirements must be met, however, before confrontation may be dispensed with. First, the prosecution must show that the out-of-court declarant is unavailable to testify despite its good faith efforts to obtain his presence at trial. Second, the prosecution must show that the out-of-court statements bear sufficient indicia of reliability to provide the jury with an adequate basis for evaluating their truth. *Roberts*, 448 U.S. at 66, 74, 100 S.Ct. at 2539, 2543; *Williams v. Melton*, 733 F.2d 1492, 1496 (11th Cir.), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 567, 83 L.Ed.2d 508 (1984).

The requirement of unavailability is met in this case; the out-of-court declarant was unavailable in that she refused, on the basis of her marital privilege, to give any substantive testimony. The second requirement—that the out-of-court statements bear sufficient indicia of reliability—presents more difficulty under these circumstances.

■ Many different factors have been identified as significant in assessing whether extrajudicial statements bear sufficient indicia of reliability for Confrontation Clause purposes. The Supreme Court has noted that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539. Apart from the indicia of reliability that form the bases of the hearsay exceptions, it is important to consider: (1) whether the truth of the out-of-court statements is corroborated by other evidence, *see Williams*, 733 F.2d at 1496; (2) the extent of the out-of-court declarant's personal knowledge of the defendant's identity and role in the crime; (3) the possibility that the statements are founded on faulty recollection; and (4) the circumstances under which the statements were made. *See Dutton v. Evans*, 400 U.S. 74, 88–89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970).

■ Based on these factors, we conclude that Mrs. Chapman's extrajudicial statements bear sufficient indicia of reliability so that the district court's admission of them did not violate Chapman's right to confrontation. We reach this conclusion primarily because substantial circumstantial evidence corroborating Mrs. Chapman's statements was presented at trial. In the out-of-court conversations at issue here, Mrs. Chapman stated that her husband had committed a bank robbery, that she saw bound bundles of money in her husband's possession in the weeks after the robbery, that her husband did not take his dog to the veterinarian on the day of the robbery, that her husband purchased two cars within a few weeks after the robbery, and that her husband borrowed a ski mask a day or two before the robbery. Each of these facts was corroborated at trial. The bank tellers who were working at the bank at the time of the robbery testified that Chapman was in the bank the day before the robbery obtensibly doing some electrical work and that his size, build, and voice tone matched the robber's. Chapman himself corroborated his wife's testimony that he kept large sums of cash in the air conditioning vents underneath his trailer. Evidence that Chapman was not at a veterinarian's office on the day of the robbery was introduced through the testimony of an

employee of the animal hospital where Chapman claims to have been. The car dealers from whom Chapman purchased his cars, as well as Chapman himself, testified regarding his cash automobile purchases. Further, the woman from whom Chapman borrowed a ski mask, as well as Chapman himself, corroborated Mrs. Chapman's statement that Chapman borrowed a ski mask sometime in the week before the robbery. Thus, we are persuaded that Mrs. Chapman's extrajudicial statements were corroborated by substantial circumstantial evidence so that they bear indicia of reliability.

We also find indicia of reliability in this case in that Mrs. Chapman had reason to know of the events which she described in her statements. Moreover, there is no apparent reason to suspect that her statements were founded on faulty recollection. In considering the circumstances surrounding Mrs. Chapman's statements, we note that when she made the statements she was aware that she was speaking to law enforcement officials who had the authority to take, and would take, immediate action that could have serious consequences to her husband and to herself as well, in that she likely realized that she later could have been held accountable for her accusations if they proved to be false. We recognize that this circumstance is different from that where a prior statement was made under oath in a formal proceeding. Nonetheless, we believe that the fact that Mrs. Chapman knowingly made the statements to public officials who would begin an investigation to ascertain the truth of her statements lends some reliability to the statements. We have considered Chapman's argument that there is a circumstance present here that suggests that his wife may have had a reason to misrepresent his participation in this crime, namely, that they were experiencing marital difficulties. We believe, based on the foregoing analysis, that this factor does not significantly minimize the reliability that

we have found to be present in the circumstances surrounding Mrs. Chapman's statements.

Accordingly, we hold that the district court's admission of Mrs. Chapman's out-of-court statements did not violate Chapman's Sixth Amendment right to confrontation. Mrs. Chapman was unavailable to be cross-examined regarding her statements and her statements bear sufficient indicia of reliability that provided the jury with an adequate basis for evaluating their truth.

**B. Hearsay**

■ Chapman also argues that his wife's out-of-court utterances were inadmissible because they were hearsay and did not fall within any of the exceptions to the hearsay rule. We reject this argument because we believe that Mrs. Chapman's statements were sufficiently trustworthy and probative to qualify under the residual hearsay exception of Federal Rule of Evidence 804(b)(5). Under Rule 804(b)(5),

[a] statement not specifically covered by any of the [section 804(b) ] exceptions but having equivalent circumstantial guarantees of trustworthiness [is not excluded by the hearsay rule if the declarant is unavailable as a witness and] the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

For the reasons given above regarding the statements' admissibility for purposes of the Confrontation Clause, we believe that Mrs. Chapman's extrajudicial statements have circumstantial guarantees of trustworthiness equivalent to those that form the bases of the other hearsay exceptions.[1] As explained above, the statements

---

1. Of course, the contours of the hearsay rule and the Confrontation Clause are not wholly congruent. See *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970). However, they clearly protect similar values, *see id.*, and thus analysis under the two provisions will unavoidably involve similar factors.

were substantially corroborated and were made under circumstances which indicate their trustworthiness. *See United States v. Rouco,* 765 F.2d 983, 994 (11th Cir.1985), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1646, 90 L.Ed.2d 190 (1986) (finding that hearsay statements had circumstantial guarantees of trustworthiness and were thus admissible under Rule 804(b)(5) largely because they were substantially corroborated by other evidence).

The other requirements of the residual hearsay exception are also met. Mrs. Chapman's statements unquestionably were offered as evidence of material facts; they were offered as evidence of the defendant's guilt of the crime charged. We also believe that the admission of Mrs. Chapman's statements served the interests of the Federal Rules of Evidence and justice in that they constituted reliable, highly probative evidence relevant to important issues in this case. Finally, we note that Rule 804(b)(5) requires the proponent of the hearsay statements to give notice to the adverse party in advance of trial of his intent to offer the statements. Chapman does not argue in this appeal and did not argue before the district court that he had no notice of the government's intent to introduce his wife's out-of-court statements. And, it appears from references in the record that Chapman and his attorney were aware that the government would offer Mrs. Chapman's statements at trial. Thus, we conclude that even if the government did not give notice sufficiently in advance of trial to satisfy Rule 804(b)(5), no plain error was committed thereby.

Accordingly, we reject Chapman's argument that Mrs. Chapman's statements were inadmissible hearsay. We are convinced that the statements were sufficiently trustworthy and important to this case to qualify under the residual hearsay exception.

### C. Marital Privilege

■ Chapman next argues that because his wife asserted her marital privilege at trial and refused to testify, her prior out-of-court statements were inadmissible. In other words, Chapman essentially argues that the marital privilege excludes not only the in-court testimony of the spouse who claims the privilege, but also any out-of-court statements attributed to that spouse by a testifying third party or by other documentary evidence. For this argument Chapman relies on *Ivey v. United States,* 344 F.2d 770 (5th Cir.1965), in which the former Fifth Circuit held the defendant's wife's out-of-court statements inadmissible on the basis of the then-existing spousal privilege rule of *Hawkins v. United States,* 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), according to which the testimony of one spouse is inadmissible over the other spouse's objection. *Ivey,* 344 F.2d at 772. We reject Chapman's reliance on *Ivey* and hold that the district court's admission of Mrs. Chapman's out-of-court statements did not violate her spousal privilege.

The Eleventh Circuit has not had occasion to apply *Ivey* in light of the Supreme Court's decision in *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), in which the Court significantly narrowed the spousal privilege by holding that it may be asserted only by the testifying spouse. *Id.* at 53, 100 S.Ct. at 913. Furthermore, a panel of the new Fifth Circuit held in *United States v. Archer,* 733 F.2d 354 (5th Cir.), *cert. denied,* 469 U.S. 861, 105 S.Ct. 196, 83 L.Ed.2d 128 (1984), that *Ivey* is no longer to be followed in the aftermath of *Trammel. Archer,* 733 F.2d at 358.[2] While we are not bound by Fifth Circuit Unit A decisions rendered after October 1, 1981, we consider such decisions to be persuasive in the Eleventh Circuit. *Matthews v. United States,* 713 F.2d 677, 683 n. 1 (11th Cir.1983); *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

We believe that the Fifth Circuit was correct in abandoning its holding in *Ivey* that extrajudicial statements come within the spousal privilege. In reaching this conclusion, we are guided, as was the Fifth

---

**2.** The new Fifth Circuit also declined to follow *Ivey* in *Archer* because in an intervening case it had distinguished *Ivey* "into oblivion." *Archer,* 733 F.2d at 358.

Circuit, by the Supreme Court's statement in *Trammel* that nothing in the law of privileges "prevents the Government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension. *It is only the spouse's testimony in the courtroom that is prohibited."* *Trammel*, 445 U.S. at 52 n. 12, 100 S.Ct. at 913 n. 12 (emphasis added). We are also influenced by the Court's warnings that testimonial privileges must be strictly construed because they obstruct the search for the truth. *Id.* at 50, 100 S.Ct. at 912; *United States v. Nixon*, 418 U.S. 683, 709–10, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

Accordingly, today we adopt the view held by the Fifth and other circuits that extrajudicial statements are not excludable on the basis of the spousal privilege. *See Archer*, 733 F.2d at 359. *See also United States v. Bond*, 847 F.2d 1233, 1242 (7th Cir.1988); *United States v. Tsinnijinnie*, 601 F.2d 1035, 1039 (9th Cir.1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1657, 64 L.Ed.2d 242 (1980); *United States v. Mackiewicz*, 401 F.2d 219, 225 (2d Cir.), *cert. denied*, 393 U.S. 923, 21 L.Ed.2d 258 (1968).

### D. Unfair Inferences

Chapman next argues that his conviction must be reversed because the district court allowed unfair inferences to be created at trial regarding his wife's refusal to testify. Specifically, Chapman complains that he was unfairly prejudiced in his defense because: (1) the district court allowed his wife to take the stand at the government's request and claim her marital privilege in front of the jury; (2) in closing argument the prosecutor improperly commented on Mrs. Chapman's refusal to testify; and (3) the district court improperly charged the jury on the subject of spousal privilege. We have considered these complaints both separately and cumulatively and conclude that Chapman has not identified an error in the district court proceedings which mandates reversal.

Regarding Mrs. Chapman's assertion of her spousal privilege in front of the jury, Chapman claims that the prosecutor knew before calling Mrs. Chapman to the stand that she would refuse to testify and that he elicited her refusal to testify in open court solely to create the inference in front of the jury that she possessed information adverse to her husband's case. On the other hand, the government claims that there was confusion before and during trial about whether Mrs. Chapman would testify against her husband and that it called her to the stand only to elicit her final decision on the matter.

 The record supports Chapman's claim that the court and the parties knew before Mrs. Chapman was called to the stand that she would claim her privilege and refuse to testify. And, we are mindful that as a general matter it is improper to permit a witness to claim a testimonial privilege in front of the jury where the witness's intention not to testify is known beforehand. *See San Fratello v. United States*, 340 F.2d 560, 565–66, *reh'g denied*, 343 F.2d 711 (5th Cir.1965). However, because Chapman did not object at trial to his wife's open claim of her privilege, we must review this issue under the plain error standard of Federal Rule of Criminal Procedure 52(b). We do not believe that Mrs. Chapman's public refusal to testify amounted to plain error.

*Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963) supports our conclusion. In *Namet*, the Supreme Court noted that district courts which have allowed in-court claims of testimonial privileges have been reversed where one of two circumstances is present. First, reversible error has been found where the prosecution "makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege." *Id.* at 186, 83 S.Ct. at 1154–55. Second, district courts have been reversed where "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Id.* at 187, 83 S.Ct. at 1155.

Neither circumstance is present in this case. It does not appear that the govern-

ment called Mrs. Chapman to the stand in order to "build its case" on negative inferences. Also, we do not think that Mrs. Chapman's open assertion of her spousal privilege added critical weight to the prosecution's case such that the district court committed plain error by allowing it.

■ Chapman next claims that an unfair inference was also created by the prosecutor's comment during closing argument regarding Mrs. Chapman's refusal to testify.[3] Chapman did not object to the comment at trial. While we recognize the impropriety of the prosecutor's comment, *see United States v. Price,* 573 F.2d 356, 365 n. 25 (5th Cir.1978), we do not believe that it constitutes plain error. We note in this regard that the prosecutor's statement was brief and unembellished and did not on its face communicate the message that Mrs. Chapman's refusal to testify implies Chapman's guilt.

Chapman claims that the district court added to the unfair inferences surrounding his wife's refusal to testify by charging the jury as follows:

> Under what is called a marital privilege, a wife cannot be compelled against her will to testify against her husband. In the same sense, the husband cannot be compelled to testify against his wife. The wife could testify for him, the Defendant, but could then be cross examined as to the believability of her testimony.

Record at 113, vol. 5.

■ This argument is without merit. The district court is afforded broad discretion in the formulation of its charge to the jury so long as the instructions accurately reflect the law and facts. *United States v. Rodriquez–Suarez,* 856 F.2d 135, 140 (11th Cir.1988), *cert. denied,* —— U.S. ——, 109

S.Ct. 875, 102 L.Ed.2d 998; *United States v. Borders,* 693 F.2d 1318, 1328–29 (11th Cir.1982), *cert. denied,* 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983). We believe that the disputed instruction accurately states the law and we are not persuaded by Chapman's contention that the instruction created an adverse inference regarding Mrs. Chapman's refusal to testify such that reversal is mandated.

Accordingly, we reject Chapman's claim that reversal is required because impermissible inferences were allowed at trial regarding Mrs. Chapman's claim of her spousal privilege. The first two instances complained of by Chapman—his wife's in-court assertion of her privilege and the prosecutor's comment on the privilege in closing argument—were not objected to at trial and we do not believe that they constitute plain error. The third instance—the jury instruction on the subject of spousal privilege—was objected to but falls within the district court's broad discretion in this area and thus did not amount to reversible error.

#### E. Unreasonable Search

■ Next, Chapman argues for reversal of his conviction by alleging that the district court admitted evidence at trial which was found in an unconstitutional warrantless search. The evidence at issue is a letter-size piece of paper showing some writing and a sketch of a building in a large parking lot. The sketch was seized by an FBI agent from the trailer where Chapman was living when he was arrested. The government argued at trial that the sketch depicted plans for a bank robbery. Before trial, Chapman filed a Motion to Suppress the sketch. However, at the beginning of trial Chapman's attorney withdrew that motion and subsequently did not

---

**3.** During closing argument, the prosecutor stated:

> Now, the Judge will charge you regarding [Mrs. Chapman's] privilege and she does have a privilege to refuse to testify against her husband. Everybody has that privilege. You have that privilege not to testify against your wife and there is a reason for it. We needn't go into the reason other than to say it's to promote marital harmony. But that's what

the law is and he's entitled to that and she is entitled to that. And that's not something that works against the Defendant.

But on the other hand she is also entitled to testify for him. She can refuse to testify for me and still testify for him. Of course, if she testifies on behalf of him she's facing cross-examination on this.

Record at 91–92. Vol. V.

object on Fourth Amendment grounds when the sketch was introduced into evidence. We decline to rule on the lawfulness of the search because we believe that any error committed by the admission of the sketch was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed. 2d 705 (1967) (constitutional error not reversible if harmless beyond a reasonable doubt). There is substantial evidence in the record apart from the sketch which indicates Chapman's guilt and we are convinced that the sketch did not contribute so significantly to Chapman's conviction that its admission, if it was erroneous, warrants reversal.

### F. Sufficiency of the Evidence

Chapman next argues that the evidence adduced at trial is insufficient to sustain his conviction. In addressing this argument we must view the evidence in the light most favorable to the government and ask whether a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *See United States v. Sorrells*, 714 F.2d 1522, 1529 (11th Cir.1983). Applying this standard, we hold that the evidence is sufficient to sustain Chapman's conviction.

The evidence showed that Chapman had been in the bank on the day before the robbery purporting to do electrical work. The tellers testified that Chapman looked suspicious when he was in the bank on that day and appeared to be surveying the bank rather than actually doing electrical work. The tellers also testified that Chapman had the same build and voice as that of the robber. It is undisputed that Chapman borrowed a ski mask sometime during the week before the robbery and that the man who robbed the bank wore a ski mask which fit the description of the mask that Chapman borrowed. Chapman did not go to work on the day of the robbery and his testimony that he stayed home in order to take his dog to the veterinarian was substantially contradicted. Also, Chapman was in possession of large sums of cash in the weeks after the robbery; this was proven through his own testimony, his wife's out-of-court statements, and his two cash automobile purchases. Finally, Mrs. Chapman told the police that her husband robbed a bank and this out-of-court statement was properly admitted as substantive evidence of Chapman's guilt.

We have reviewed the record and are convinced that the jury in this case was reasonable in reaching its verdict that the evidence established Chapman's guilt beyond a reasonable doubt. Thus, we reject Chapman's argument that there is insufficient evidence to sustain his conviction.

### G. Postconviction Motions

In January 1987, while this direct appeal was pending, Chapman filed a *pro se* motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct the Sentence. Then, in March 1987, before the district court ruled on the section 2255 motion, Chapman filed a *pro se* application for writ of habeas corpus. In May 1987, the district court summarily dismissed Chapman's section 2255 motion on the merits. The district court treated Chapman's second motion styled as an application for writ of habeas corpus as a motion under section 2255 and summarily dismissed it in June 1987 on the basis of abuse of the procedure. Chapman appealed the district court's dismissal of these motions. On appeal, this court remanded the motions to the district court pending the resolution of this direct appeal. Thus, contrary to what Chapman asserts in his *pro se* brief, the district court's dismissals of his section 2255 motions are not properly before this court at this time.

### II. Conclusion

We reject Chapman's arguments addressed here as well as his remaining arguments which we do not address, finding them not to merit discussion. The evidence adduced at trial was sufficient to sustain his conviction and he has not identified any error in the proceedings which warrants reversal. Accordingly, the conviction is

AFFIRMED.