UNITED STATES of America, Plaintiff-Appellee,

v.

Robert E. CAPUA, Defendant-Appellant.

No. 79–3948.

United States Court of Appeals, Fifth Circuit. Unit A

Sept. 21, 1981.

Barry Abrams, Sewell & Riggs, Houston, Tex., for defendant-appellant.

John M. Potter, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before RUBIN, RANDALL and TATE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The jury selection procedure formerly employed in the United States District Court for the Southern District of Texas permitted the expiration of a significant length of time between the selection of a jury and the start of the trial of a criminal defendant, and created the possibility that the jurors selected might serve as jurors in similar criminal cases during that interval. Because of the use of that procedure, we have, on direct appeal, reversed a number of convictions.[1] Now a federal prisoner who objected to the jury selection procedure prior to his trial, but who filed and subsequently withdrew his direct appeal from his conviction, challenges that deficient selection procedure in a collateral attack on the judgment of conviction under 28 U.S.C. § 2255. Because the errors alleged by the petitioner are not of constitutional dimension and because these nonconstitutional claims could have been raised by a direct appeal, we hold that they may not now be asserted in a collateral proceeding, and, therefore, we affirm the district court's judgment denying the petitioner's Section 2255 motion.

Although the petitioner, Robert Capua, initially filed a direct appeal from his judgment of conviction, he later withdrew that appeal, apparently because of his desire to have his sentence on the conviction involved in this case run concurrently with that imposed by a federal court in another district on an unrelated conviction. His actions in the trial court indicate his awareness of the issues relevant to the claims of error recognized in *United States v. Mutchler*, 559 F.2d 955 (5th Cir. 1977), and *United States v. Price*, 573 F.2d 356 (5th Cir. 1978), even though those decisions had not been published when Capua made his decision to abandon his direct appeal. Thus, the claims asserted in his habeas petition clearly could have been made in the direct appeal had it been pursued.

■ Selection of a jury long before the trial date creates many potentials for prejudice to the defendant. In *Mutchler* we held that service by jurors in other similar criminal cases between the time of their selection and the trial date deprives the defendant of the effective exercise of peremptory challenges, an important procedural element in the selection of a fair and impartial jury. 559 F.2d at 958–59. Indeed, such interim jury service in a similar criminal case may affect the juror's impartiality and entitles the defendant to challenge the juror for cause. *United States v. Jefferson*, 569 F.2d at 262; *United States v. Price*, 573 F.2d at 363.

---

1. *United States v. Mutchler*, 559 F.2d 955 (5th Cir. 1977), *modified*, 566 F.2d 1044 (5th Cir. 1978); *United States v. Jefferson*, 569 F.2d 260 (5th Cir. 1978); *United States v. Price*, 573 F.2d 356 (5th Cir. 1978).

■ Merely checking the records of the clerk of the district court will not provide defense counsel with all the information regarding interim jury service necessary for the full exercise of the challenges to which the defendant is entitled. *United States v. Jefferson*, 569 F.2d at 262–63. Even if the clerk's records are available for defendant's review, supplemental voir dire by the district court is required to determine whether the particular interim service will subject the juror to challenge for cause; supplemental voir dire is also essential to the effective exercise of the defendant's peremptory challenges. *Id.* The district court should not require the defendant to bear the burden of that inquiry by relegating him to a review of the records of the clerk's office to determine whether interim jury service has occurred. *Id.* at 263.

In *Price* we held that the expiration of a "significant delay" between jury selection and the commencement of trial requires the trial court to conduct supplemental voir dire regarding not only any interim jury service but also any other events occurring during the delay that "may have caused the formation of preconceptions concerning the case at hand, or of which the attorneys would simply be entitled to be advised in order to effectively exercise peremptory challenges." *United States v. Price*, 573 F.2d at 364. The failure to conduct supplemental voir

dire after such a significant delay between selection and trial requires a new trial even absent interim jury service by selected jurors. *Id.* at 363–64. A thirty-nine day delay between selection and trial is a "significant delay" for purposes of the *Price* requirement of supplemental voir dire. *United States v. Garza*, 574 F.2d 298, 303 (5th Cir. 1978).

■ If, therefore, the issue is properly preserved for appellate review, the court's failure to conduct supplemental voir dire is reversible error on direct appeal. However, the right is waived unless the defendant raises it in the trial court by urging or reurging it immediately before the commencement of the trial testimony. Only such a request triggers the duty of the trial court to conduct the supplemental voir dire. *Id.* at 303–04; *United States v. Eldridge*, 569 F.2d 319 (5th Cir.), *cert. denied*, 436 U.S. 929, 98 S.Ct. 2827, 56 L.Ed.2d 773 (1978); *United States v. Price*, 573 F.2d at 363 & n.22.

We assume, for purposes of this opinion, that, at the outset of his trial, Capua adequately alerted the trial judge to his objections to the jury selection procedure, including the possibility of interim jury service and significant delay between selection and trial.[2] This brings us to the key issue:

---

**2.** That Capua adequately preserved the claims under the *Mutchler* and *Price* decisions in the trial court is not free from doubt. Prior to the selection of his jury, and in the interim between jury selection and trial, Capua filed a series of motions that clearly raised the relevant issues of possible interim jury service and delay between selection and trial. However, the statements of defense counsel at the outset of trial, the critical point at which the issues must be raised in order to prevent waiver, might be interpreted to indicate satisfaction with his review of the clerk's records on interim jury service and his challenge for cause of the two jurors that those records indicated had performed such interim service. His motion to quash the jury at that point appears to have been limited to an attack on the failure of the panel to be representative of the community by age and ethnic background. Nevertheless, for purposes of this opinion, we assume that Capua sufficiently reurged the issues of interim jury service and significant delay to preserve those issues for appellate review.

We assume further that the thirty-five day period between the selection of Capua's jury and the commencement of his trial was a significant delay for purposes of the *Price* requirement of supplemental voir dire. We also assume that, were this a direct appeal from Capua's conviction, he would be entitled to a new trial under the *Price* decision based on the failure of the trial judge to conduct supplemental voir dire regarding other prejudicial occurrences in regard to the selected jurors during the significant delay between jury selection and trial, *United States v. Price*, 573 F.2d at 363–64, or at least to a remand for further proceedings to determine the nature of any interim jury service by the members of Capua's jury, *United States v. Jefferson*, 569 F.2d at 263. Finally, we note that the two jurors challenged for cause by Capua at the outset of trial due to their interim jury service in a similar criminal case were not struck by the trial judge until immediately prior to the commencement of the jury's deliberations. No claim is made, how-

whether a claim based only on the admittedly deficient jury selection procedures may be raised collaterally by a Section 2255 motion for habeas relief.

■ "It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805, 811 (1979). In determining whether a claim of error is cognizable under Section 2255, a distinction is drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other. *Id. See Grimes v. United States*, 607 F.2d 6, 10–11 (2d Cir. 1979).

■ Section 2255 does not offer recourse to all who suffer trial errors. *United States v. Addonizio*, 442 U.S. at 184, 99 S.Ct. at 2240, 60 L.Ed.2d at 811. It is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice. *United States v. Decoster*, 624 F.2d 196, 207 (D.C.Cir.1979) (en banc). In dictum in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court reiterated the "established rule" regarding the circumstances under which a nonconstitutional claim may be asserted collaterally:

> [N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings. ... Even those nonconstitutional claims that could not have been asserted on direct appeal can be raised on collateral review only if the alleged error constituted " 'a fundamental defect which inherently results in a complete miscarriage of justice,' " [*Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109, 119 (1974)], *quoting Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

428 U.S. at 477 n.10, 96 S.Ct. at 3044 n.10, 49 L.Ed.2d at 1077 n.10 (emphasis added). *See Davis v. United States*, 417 U.S. at 345–46 n.15, 94 S.Ct. at 2305 · n.15, 41 L.Ed.2d at 118 n.15, stating that *Sunal v. Large*, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947), "held that a federal prisoner could not assert a nonconstitutional claim on collateral attack if he had not raised it on appeal." *See also United States v. Timmreck*, 441 U.S. 780, 783, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634, 638 (1979) (formal violation of Rule 11, Fed.R.Crim.P., could have been raised on direct appeal and no reason exists to allow collateral attack to do service for an appeal).

■■ On the other hand, the failure to appeal directly a constitutional claim of error will not bar habeas relief under Section 2255 absent a deliberate choice not to appeal made by conscious election. *Kaufman v. United States*, 394 U.S. 217, 220 n.3, 89 S.Ct. 1068, 1070–71 n.3, 22 L.Ed.2d 227, 233–34 n.3 (1969); *Buckelew v. United States*, 575 F.2d 515, 519 (5th Cir. 1978); *Thor v. United States*, 574 F.2d 215, 219 (5th Cir. 1978); *Sosa v. United States*, 550 F.2d 244, 247–48 (5th Cir. 1977). Proof of deliberate bypass usually involves a showing that the petitioner sought to gain a tactical or strategic advantage by foregoing the direct appeal. *Buckelew v. United States*, 575 F.2d at 519. Unless the record clearly establishes a deliberate bypass of the direct appeal, the issue requires an evidentiary hearing. *Buckelew v. United States*, 575 F.2d at 519; *Coco v. United States*, 569 F.2d 367, 370–71 (5th Cir. 1978); *McKnight v. United States*, 507 F.2d 1034, 1036 (5th Cir. 1975).

■ The procedural errors that *Mutchler* and *Price* recognized as entitling the defendant to a new trial cannot be raised to deprivations of constitutional rights. Both decisions considered the defects in the jury selection procedure to affect the defendant's right to a trial by a fair and impartial jury, *United States v. Mutchler*, 559 F.2d at 958; *United States v. Price*, 573 F.2d at 361 & 365. *See also United States v. Nell*, 526

---

ever, that their presence during the two day trial tainted the rest of the jury, as to provide a

valid basis for reversal based on a *Mutchler* claim of prejudicial interim jury service.

F.2d 1223, 1229 (5th Cir. 1976) (challenges for cause and peremptory challenges are the principal mechanism by which the right to an impartial jury is implemented); *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977) (the right to a fair trial by impartial jurors is secured by the system of challenges exercised during voir dire). Nevertheless, while these procedures implement the right to trial by an impartial jury, they are but means to an end, not an inherent part of the sixth amendment.[3] The provisions in the Federal Rules of Criminal Procedure fixing the number of peremptory challenges and the jurisprudence concerning the method as well as the grounds for making challenges for cause are not inherent components of the right to a trial by a fair and impartial jury.

 Our refusal to denominate such claims as constitutional does not render them insignificant. Indeed, the deficient selection procedures complained of by Capua amount to a fundamental defect in the trial proceedings. *Davis v. United States*, 417 U.S. at 346, 94 S.Ct. at 2305, 41 L.Ed.2d at 119. However, under the "established rule" stated by the Supreme Court in *Stone v. Powell*, even if the nonconstitutional error constitutes a fundamental defect, it may not be asserted in a collateral proceeding if it could have been raised on a direct

appeal. 428 U.S. at 477 n.10, 96 S.Ct. at 3044 n.10, 49 L.Ed.2d at 1077–78 n.10. *See United States v. Decoster*, 624 F.2d at 207.

The scope for habeas relief in cases of nonconstitutional error is exceedingly narrow. "[T]he writ of habeas corpus should not do service for an appeal.... This rule must be strictly observed if orderly appellate procedure is to be maintained." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 274, 63 S.Ct. 236, 239, 87 L.Ed. 268, 272 (1942). *See United States v. Addonizio*, 442 U.S. at 184 n.10, 99 S.Ct. at 2240 n.10, 60 L.Ed.2d at 811 n.10; *Stone v. Powell*, 428 U.S. at 477 n.10, 96 S.Ct. at 3044 n.10, 49 L.Ed.2d at 1077–78 n.10; *Sunal v. Large*, 332 U.S. at 178, 67 S.Ct. at 1590, 91 L.Ed. at 1986.

Because the claims asserted by Capua collaterally are not of constitutional dimension and could have been asserted on direct appeal, he has failed to bring his claims within the limited scope of habeas relief under Section 2255.

For these reasons, the judgment denying relief under Section 2255 is AFFIRMED.

---

**3.** We intimate no opinion concerning whether, if the habeas petitioner's claim were based on the actual participation in the jury's deliberations of a juror whose participation denied him a fair trial, rather than on the failure of the trial judge to conduct supplemental voir dire to determine whether interim service had occurred, or on the possible jury taint caused by the presence in the jury box, prior to deliberations, of two jurors who had performed such interim service, a claim of constitutional proportion based on the denial of an impartial jury would be established. Some of the jurors who deliberated on Capua's conviction had been selected to serve in other cases, but juries were not required to serve in any of the other cases save *United States v. McDonald*, the case in which the two reserved jurors had participated. Jurors Guerara, Aleman, Jefferson and Contreras were chosen for service in *United States v. Shadow and Waters*, Cr. 76–C–278, but the indictment was dismissed, and the trial was not held. A superseding indictment was filed and the defendants pleaded guilty. Jurors Aleman,

Lopez, and Contreras were selected for the trial of *United States v. Alvarez and Ruigomez*, Cr. 76–C–284. On rearraignment, Alvarez pleaded guilty. Ruigomez waived jury trial and was tried by the court. Jurors Sanchez and Lopez were selected to serve in *United States v. Avala*, Cr. 76–C–283, but the indictment was dismissed on April 19, 1977, prior to trial.

We take judicial notice of the official court records showing this information. Rule 201, Fed.R.Evid.; *cf. Zimmerman v. Spears*, 565 F.2d 310, 312 (5th Cir. 1977) (judicial notice taken of earlier habeas proceedings in different court); *Moore v. Estelle*, 526 F.2d 690, 694 (5th Cir.) (same), *cert. denied*, 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1192 (1976); *Jones v. Attorney General of the United States*, 278 F.2d 699, 701 (8th Cir. 1960) (same). *See generally* IX J. Wigmore, Evidence § 2579 (3d ed. 1940 and 1980 Supp.); *see also United States v. Ashe*, 90 F.Supp. 463, 464 (W.D.Pa.1950) ("Judicial notice will be taken of all records and proceedings in either the state or federal courts which relate to the [habeas] petitioner's claim for relief.").