02-09-171-CR
















 
 
 
 
 
 
 




 

 

 

 

 

 

                                               COURT OF APPEALS

                                                SECOND
DISTRICT OF TEXAS

                                                               FORT
WORTH

 

 

                                             NO.
 02-09-00171-CR

 

 

JEFFREY WILLIAM RODEN                                                               APPELLANT

 

                                                            V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

                 FROM THE 355TH
DISTRICT COURT OF HOOD COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

A jury
convicted Appellant Jeffrey William Roden of burglary
of a habitation and assessed his punishment at sixty years=
confinement.[1]  The trial court sentenced him
accordingly.  In two issues, Appellant
argues that the trial court erred by failing to give an accomplice-witness jury
instruction as to witness Gerald Smith and by conducting a portion of the voir dire in Appellant=s
absence.  We affirm the trial court=s
judgment.

I. 
Factual Background

On
June 27, 2008, Appellant and some friends gathered outside his home in Granbury
for an informal party around 8:00 p.m. 
The party was attended by, among others, Appellant=s
neighbor, Billy Brecht; Brecht=s
cousin, Joshua Williams (who lived with Brecht); and Brecht=s
friend, Gerald Smith.  Smith was in town
for work and staying with his brother, Ronald Smith.  By all accounts, Appellant and Williams began
discussing Appellant=s next door neighbor, Jerry Beeman, and the fact that he was in jail, that his mobile
home was unoccupied, and that his television could be taken and sold.  Smith testified that, as they talked,
Williams suggested he (Williams) could punch out the glass in one of Beeman=s
windows with his fists.  Smith assumed
this was Ajust
a conversation@ and
responded that, if it were him, he Awould
throw something through the window.@  Shortly thereafter, Appellant and Williams
walked toward Appellant=s house, and Smith heard
glass break a few minutes later.  When
Appellant and Williams returned, Williams stated that Appellant had thrown a
brick through Beeman=s
window.  Afterward, Williams returned to Beeman=s
house several times to break out the remainder of the window, and Smith and
Brecht left the party because they did not want to be involved.  Tanya Clemens, a neighbor, testified that
around 10:30 that night, she went outside to make a phone call and heard glass
breaking.  She saw Williams in the area
of Beeman=s
house and then saw Smith walk by and drag Williams away from the area.

Williams
testified that he and Appellant broke Beeman=s
window, and that after Appellant helped him climb through the window, Williams
unlocked the front door.  Once inside,
Williams stole a camera, a revolver, two knives, and a carton of
cigarettes.  Appellant stole stereo
equipment, a DVD player, bottles of liquor, and old coins.  Afterward, Williams assisted Appellant in
installing the electronics in Appellant=s
house.

Smith
testified that later in the evening, he, Brecht, and a few others stopped by Appellant=s
house and saw Williams installing a DVD player. 
Not wanting to get involved, Smith left Appellant=s
house and began walking back to his brother=s.  An acquaintance who
lived in the neighborhood, Barry Smith, stopped to give him a ride.  Barry testified that he picked up Smith
around 11:30 p.m. and that they drove for awhile before he dropped off Smith
between 12:45 and 1:00 a.m.  Barry did
not notice Smith carrying anything on his person, and he did not notice that
Smith smelled like smoke.

Williams
testified that, after he installed the electronics for Appellant and
unsuccessfully tried to sell the camera and gun, he returned to Brecht=s
house.  As Williams was talking to Brecht=s
daughter, April, Appellant called and said he wanted to set Beeman=s
house on fire.  Williams immediately hung
up the phone and told April he had to take care of some business.  Williams then left, and he and Appellant
re-entered Beeman=s
house sometime between 2:00 and 3:00 a.m.  As Williams poured lighter fluid all over the
living room, Appellant came from the back of the house and stated, ALet=s
go.@  Williams returned to Brecht=s
house and told April to tell anyone who asked about his whereabouts either that
he was not there or that he was sleeping.

April
testified that, while Williams was at her house that evening, Appellant called Williams
and asked, ADo you
want to burn [Beeman=s]
house with me?@[2]  A few minutes later, April saw Appellant
(with bottles in his hands) and Williams walking toward Beeman=s
house.  When Williams returned, he
stated, AI
just watched [Appellant] set [Beeman=s]
house on fire.@  He then instructed April that, if the police
asked about him, to say he had been sleeping.

Hood
County=s
deputy fire marshal, Gary Wesson, testified that the fire at the Beeman house was reported at 2:30 a.m.  In his opinion, Appellant and Williams
committed the burglary and the arson.

During
Appellant=s
case in chief, his wife Darlene Roden testified that,
on the night of the burglary, Williams came to their house with a gun and some
electronic items and that Smith came by and had a knife.  After Appellant told Williams and Smith to
leave, Roden went to sleep, and Athe
next thing [she] knew,@ Beeman=s
house was on fire.

Ronald
Smith testified that, after his brother left his house the morning after the burglary, his two-year-old daughter approached him
holding a straight-edged razor.  Ronald
also found a knife on the couch where Smith had slept, and Ronald=s
wallet was missing.  Ronald also
testified that he and Appellant were one another=s
best, and only, friends.

At
the conclusion of the guilt-innocence phase, the jury found that Appellant Aintentionally
or knowingly, without the effective consent of Jerry Beeman,
the owner thereof, entered a habitation and attempted to commit or committed
theft.@

II. Accomplice-Witness Instruction

In
his first issue, Appellant contends that the trial court erred by denying his
request for an accomplice-witness jury instruction regarding Gerald Smith=s
testimony.[3]

A.  Applicable Law

A
person who is complicit in a crime and who testifies against another is an
accomplice witness.  See Tex.
Penal Code Ann. ' 7.02(a) (Vernon 2003) (the
law of parties);[4]
Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005) (Athe
accomplice-witness rule@).  Under the accomplice-witness rule, a
conviction cannot be secured upon an accomplice=s
testimony unless corroborated by other evidence tending to connect the
defendant to the offense.  Tex. Code Crim. Proc. Ann. art. 38.14; Druery
v. State, 225 S.W.3d 491, 498 (Tex. Crim. App.), cert. denied, 552 U.S. 1028 (2007).

A
witness may be an accomplice either as a matter of law or as a matter of fact,
and the evidence in each case determines what jury instruction, if any, should
be given.  Cocke
v. State, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006), cert. denied, 549 U.S. 1287 (2007). 
If the evidence is clear that the witness is an accomplice as a matter
of law, e.g., the
witness has been, or could have been, indicted for the same or lesser-included
offense, the trial court must instruct the jury on the law of
accomplice-witness testimony.  Id. at 747–48.  If there is conflicting evidence whether a
witness is an accomplice, the court should submit the question to the jury
inquiring whether the jury finds that the witness is an accomplice as a matter
of fact.  Id. at 748.  If there is no evidence that a witness is an
accomplice, the trial court is not obligated to provide an accomplice-witness
instruction.  Id.

In
determining whether a person is an accomplice, either as matter of fact or of
law, courts may look to events occurring before, during, and after the
commission of the offense including actions that show an understanding and
common design to do a certain act.  Kunkle v. State, 771 S.W.2d 435, 439 (Tex.
Crim. App. 1986), cert. denied, 492
U.S. 925 (1989); see Druery, 225 S.W.3d at 498 (holding that an accomplice participates with
the defendant before, during, or after the commission of a crime and acts with
the required mental state).  A person is
not an accomplice unless he affirmatively assists in the commission of the
offense.  Paredes v. State, 129
S.W.3d 530, 536 (Tex. Crim. App. 2004); Kutzner
v. State, 994 S.W.2d 180, 187 (Tex. Crim. App. 1999).  Mere presence during the crime, knowledge
about the crime and failure to disclose it, or even concealment of the crime is
not sufficient to render a person an accomplice witness.  Medina v. State, 7 S.W.3d 633, 641
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102 (2000); Blake v.
State, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998).

         B.  Application of Law to Facts

Appellant
argues that Smith was an accomplice because, when Williams talked about
punching his fist through a glass window, Smith expressed the opinion that Aif
it was me, I would throw something through the window.@  As further evidence, Appellant points to (1)
Tanya Clemens=s
testimony that she saw Smith drag Williams away from Beeman=s
house after she heard the sound of breaking glass; (2) various witnesses=
testimony that Smith and Williams were in Appellant=s
house with the stolen items; (3) Darlene Roden=s
testimony that Smith brought a knife to Appellant=s
house after the burglary; and (4) the testimony of Smith=s
brother that he found a knife where Smith had slept the night before.  Although Appellant maintains that Smith Acould
have been prosecuted for a crime arising out of the incident,@ he does
not specify an offense.

None
of the evidence establishes that Smith, acting with the required culpable
mental state, actively participated with Appellant before, during or after the
commission of the burglary of Beeman=s
home or that he acted in a manner to promote the burglary or the arson.  Williams testified that Smith did not help
break Beeman=s
window, that Smith left the party when he realized Williams and Appellant had
done so, and that Williams and Appellant were the only ones who entered Beeman=s
home, stole property, and set the house on fire.  Smith testified that he did not participate
in the arson or the theft and that neither Appellant nor Williams gave him any
stolen property the night of the burglary. 
As the State points out, none of the witnesses identified any knife that
Smith possessed as stolen during the burglary. 
Deputy Fire Marshal Wesson testified that, in his opinion, Appellant and
Williams committed the burglary.

We
therefore hold that the trial court did not err by refusing to submit an
accomplice-witness instruction regarding Gerald Smith because there was no
evidence that he was an accomplice as a matter of law or as a matter of
fact.  We overrule Appellant=s
first issue.

III.  Voir Dire

In
his second issue, Appellant contends that the trial court erred by conducting a
portion of his voir dire outside his presence in
violation of his rights under the federal and state constitutions and article
33.03 of the code of criminal procedure. See U.S. Const. amend. VI; Tex. Const. art. I, ' 10; Tex. Code Crim. Proc. Ann. art.
33.03 (Vernon 2006).

A.  Procedural Background

On
the morning of May 4, 2009, the trial court called a single venire panel from
which a jury in an unrelated case was to be chosen in the morning, and
Appellant=s
jury was to be chosen in the afternoon. 
Appellant=s counsel  objected to the State questioning any
morning panel members who would later sit on Appellant=s
panel. The trial court noted the objection but proceeded.  One of the prosecutors in Appellant=s
case participated in the morning voir dire.  The State does not dispute that neither
Appellant nor his counsel attended the morning voir
dire.

Appellant
was present during the afternoon while his counsel and the State conducted a
complete voir dire of the panel members.  All the afternoon panel members had attended
the morning session.  After the jury in
Appellant=s
case was selected, Appellant=s
counsel objected and moved to strike Athe
jury panel in its entirety,@
stating that the seated venirepersons had been
examined in the morning outside Appellant=s
presence; that neither he nor Appellant had heard, or were given the
opportunity to respond to, the panel members=
answers; and that the members=
answers would not be included as part of his trial record.  The trial court overruled the objection, and
Appellant=s
trial began the next morning.

B. Applicable
Law

The
right of confrontation under article I, section 10 of the Texas constitution
and the Sixth Amendment to the United States Constitution includes A>the
absolute requirement that a criminal defendant who is threatened with loss of
liberty be physically present at all phases of proceedings against him, . . .
absent a waiver of that right through defendant=s
own conduct[.]=@  Miller v. State,
692 S.W.2d 88, 90 (Tex. Crim. App. 1985) (quoting Baltierra
v. State, 586 S.W.2d 553 (Tex. Crim. App. 1979)).  Article 33.03 of the code of criminal
procedure provides that, in all felony prosecutions, Athe
defendant must be personally present at trial@
unless he Avoluntarily
absents himself after pleading to the indictment or information, or after the
jury has been selected[.]@  Tex. Code Crim. Proc. Ann.
art. 33.03.

C.
Application of Law to Facts

Appellant
maintains that Article 33.03 codified his constitutional right to confrontation
and that this article is Aeven more protective of
[his] rights than the constitutional provisions because the right to be present
cannot be waived before the jury is selected.@[5]  Building on this contention, Appellant argues
that a portion of his voir dire was held outside his
presence because the State developed a relationship with the prospective jurors
during the morning voir dire session that he did not
observe.

Consistent
with our previous holdings, we reject Appellant=s
premise that the morning voir dire session of another
individual, in which veniremembers and one member of
the prosecution team in Appellant=s
case participated, constituted voir dire in Appellant=s
case for the purposes of article 33.03.  See
Cuevas v. State, No. 02-08-00014-CR, 2008 WL 4531702, at *2 (Tex. App.CFort
Worth Oct. 9, 2008, pet. ref=d) (mem. op., not designated for publication); Ballard v.
State, No. 02-07-00027-CR, 2008 WL 204270, at *1 (Tex. App.CFort
Worth Jan. 24, 2008, pet. dism=d) (mem. op., not designated for publication); Lain v. State,
No. 02-06-00325-CR, 2007 WL 2331017, at *2B3
(Tex. App.CFort
Worth Aug. 16, 2007, pet. ref=d) (mem. op., not designated for publication).  When the trial court commenced voir dire in Appellant=s
case in the afternoon, Appellant and his counsel were present and had full
opportunity to voir dire each panel member.  See Ballard, 2008 WL 204270, at *1 (citing
Adanandus v. State, 866 S.W.2d 210, 217
(Tex. Crim. App. 1993), cert. denied, 510 U.S. 1215 (1994)); Lain,
2007 WL 2331017, at *3 (citing Adanandus).[6]

Appellant
cites Bledsoe v. State for its harmless error analysis.  See 936 S.W.2d 350, 351 (Tex. App.CEl Paso 1996, no pet.).  Notably, the Bledsoe court held that
article 33.03 was violated where the defendant was absent (for unspecified
reasons) for the entirety of his trial=s
jury selection process.  Id.  Because Appellant was present for the
entirety of his trial=s voir
dire, we hold that the statute was not violated.  Thus, we do not address the harm analysis in Bledsoe.  We overrule Appellant=s
second issue.

IV.  Conclusion

Having
overruled Appellant=s two issues, we affirm the
trial court=s
judgment.

 

 

ANNE GARDNER

                                      JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

 

DAUPHINOT,
J. filed a concurring opinion.

 

PUBLISH

 

DELIVERED:  February 24, 2011

 

 

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                               COURT OF APPEALS

                                                SECOND
DISTRICT OF TEXAS

                                                               FORT
WORTH

 

 

                                             NO.  02-09-00171-CR

 

 

JEFFREY WILLIAM RODEN                                                               APPELLANT

 

                                                            V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

                 FROM THE 355TH DISTRICT COURT
OF HOOD COUNTY

 

                                                       ------------

 

CONCURRING
OPINION

----------

          I agree with the majority=s
holding that the trial court did not err by refusing to instruct the jury that
Gerald Smith was an accomplice as a matter of law or by refusing to submit the
issue to the jury of whether he was an accomplice as a matter of fact.  I also agree with the ultimate outcome of the
opinion, but I write separately to address a pervasive problem raised by
Appellant.  It is a problem that has been
addressed by federal courts but that continues as routine practice in some
jurisdictions—selecting more than one jury from a single venire.








          As our sister court in Tyler reminded us, “Although[] the
selection of more than one jury from a venire panel[] has been characterized as
a fundamental defect in the trial proceedings, it has never been held to be of
constitutional dimension.”[7]  It is common knowledge that “[b]ecause many
Texas counties have small populations, interim jury service is allowed.”[8]
 Thus, it is well settled that the
selection of more than one jury from a venire panel is a necessary and accepted
practice in some counties.  In many small
counties, a single jury panel is brought in for voir dire.  That panel is the jury panel for more than
one case, and they sit through the voir dire for all of the cases.  Customarily, the prosecutor questions the
jury about the issues in each of the cases to be tried, but the lawyer
representing the defendant participates only in the voir dire touching on the
issues of that defendant=s case.  This was the manner in which the voir dire
was conducted in the case now before this court.

          As the Fifth Circuit has explained, the practice of
choosing more than one jury from a single venire is a
fundamental defect:  “Our refusal to
denominate such claims as constitutional does not render them insignificant.@[9]  And as the Texas Court of Criminal Appeals
explained in Linnell II,

          Although in many jurisdictions repeat
jury service is inevitable, there is a key difference between prior jury service and interim jury service:  the difference is the ability of the parties
to question veniremembers about the former but not the latter.  As the Fifth Circuit reasoned:  “The vice of
(interim jury service) is that it forces counsel to act on information that
must necessarily be obsolete by the time of trial.”

 

          . . . . 

 

          In the instant case the parties were
required to conduct voir dire and exercise their peremptory strikes before the interim jury service.  By picking two juries from the same venire, it
was impossible to question the interim jurors concerning jury service which
they had yet to experience.  No amount of
voir dire can determine the effects of sitting in a
trial which has not yet taken place.  And,
as the Courts in Kirkland and Jefferson noted, there exists a “heightened
danger of prejudice” with interim jury service.  Consequently, we hold that interim jury
service denies the parties the intelligent exercise of their peremptory
challenges.

 

          We understand that repeat jury service
may be necessary in some jurisdictions because of their small population.  However, even in those jurisdictions the
constitutional right to counsel encompasses the right to question prospective
jurors in order to intelligently exercise peremptory challenges.  Therefore, we hold that if the trial judge
intends to select more than one jury from a single venire, the veniremembers
selected to serve as jurors must be excluded from the venire from which the
other jurors will be selected.[10]

 

          Appellant argues that the trial court erred by conducting
voir dire in this manner because it violated the requisites of article 33.03 of
the Texas Code of Criminal Procedure, which provides that a defendant Amust
be personally present at the trial.@[11]  The State argues that Athe
trial@
refers only to a defendant=s
own trial, and not the trial of another defendant who shared the same jury
panel.

          The State also argues that the morning session of voir dire
was for a different defendant and was therefore not
part of Appellant=s trial and that the trial
court consequently did not err by conducting the morning session outside
Appellant=s
presence.  The State alternatively argues
that even if voir dire were erroneously conducted outside Appellant=s
presence, any error would be harmless because the panel would be reexamined
with him present.

          The State relies on Adanandus v. State.[12]  In Adanandus, the defendant
voluntarily absented himself from the first voir dire in his case, but,
according to the State, this “absence . . . was . . . >undone= [by
a] re-examination in [his] presence of [all those] voir
dired in his absence.@[13]  The State argues that because Appellant had
an opportunity to fully voir dire in his presence everyone who had been
questioned during the previous voir dire, the purposes of the statute were met,
again relying on Adanandus.

          This is a difficult issue because it requires balancing the
limitations of resources in small counties against defendants’ constitutional
rights.  Allowing the State’s prosecutor
to participate in a voir dire examination from which the defendant is barred
from participating appears to give the State an advantage.  The State has the opportunity to observe the
venire members’ reactions to questions that may not be asked when the defendant
is present.  The State also has the
opportunity to watch the body language of the members of the venire at a time
denied to the defendant.  Additionally,
the jury becomes better acquainted with the representative of the State.  Anyone who has ever tried a lawsuit knows
that it is very important to bond with the jurors who eventually end up on the
jury.

          At the same time, especially if a defendant is in jail, it
taxes the resources of the small county to allow an incarcerated defendant to
watch someone else=s voir dire without allowing
the jury to see the defendant in handcuffs or shackles or specifically
supervised by a bailiff or sheriff=s
deputy.  Personnel resources of the
county are strained by requiring supervision of more than one defendant at the
same time.

          In the case now before this court, Appellant was not in
jail at the time of voir dire but had been released after posting bail.  Trials are public.[14]  Under normal circumstances, any person is
free to attend court and to watch and listen to voir dire.  Appellant, however, suggests that he did not
attend voir dire of the panel for the case preceding his, and the record does
not reflect that Appellant or his counsel attended court during the voir dire
of the panel for the case preceding his. 
Nothing in the record suggests that Appellant was prevented from
attending the voir dire, although he would not have
had the opportunity to interact with the potential jurors at the same time that
the State was speaking with them and establishing a relationship with them.

As the Texas Court of Criminal Appeals has
stated, 

 

[S]imilar jury
selection procedures have been characterized as ‘a fundamental defect in the
trial proceedings’ but nevertheless not of constitutional dimension.   . . . Claims of administrative efficiency,
convenience and necessity as justification for interim jury service in similar
cases have a thin veneer indeed.  Trial
judges should make every effort to avoid such procedure.[15]

 

It
would be better practice to have a completely separate venire for each voir
dire session, but small counties often do not have that resource.  It would be better to allow the defendant and
his counsel to be present during all discussions with the venire from which the
defendant=s
jury will be selected.  Again, small
counties do not have those resources. 
Yet article 33.03 requires that he be present.[16]


Although the Fifth
Circuit has called this practice a fundamental defect, it does not offend the
constitution of either the United States or of Texas.  Consistent with the Fifth Circuit=s
holding, Appellant has not raised a constitutional challenge to the procedure
of calling a single venire to be questioned regarding more than one case.  He has raised only a statutory complaint.  Absent a showing that a juror is disqualified,
whether she was disqualified in an earlier voir dire or for some other reason,
or that a juror served on another jury chosen from the same venire, the
procedure of choosing more than one jury from a single panel, while not
favored, is not necessarily error when the defendant is free to be present in
the courtroom during voir dire of the panel for other trials.

          In the case now before this court, the evidence of
Appellant=s
guilt was overwhelming, and it cannot be said that the trial court=s
calling a single venire from which both the jury for his trial and the jury for
the case preceding his were chosen had a substantial and injurious effect or
influence on the jury’s verdict.  There
is no evidence that Appellant was prevented from being present during the voir
dire for the preceding case, nor is there evidence that the voir dire in which
Appellant did participate was not sufficient to provide the information he
needed.  Nor is there any evidence that
any juror was disqualified or struck for cause either during the first voir
dire or as a result of anything that occurred because of participating in the
first voir dire or that any juror served on the trial preceding Appellant=s
trial.  I would therefore hold that
Appellant has not established that the trial court abused its discretion in
allowing more than one jury to be chosen from a single venire.

          Because I agree with the Fifth Circuit that this practice
of choosing multiple juries from a single venire, with only one party present
and participating in the entire voir dire process, has
serious and fundamental flaws, I respectfully concur in the result only
regarding this issue.

 

 

                                                                  LEE
ANN DAUPHINOT

                                                                  JUSTICE

 

PUBLISH

 

DELIVERED:  February 24, 2011











[1]See Tex. Penal Code Ann.
' 30.02(a)(3) (Vernon 2003).





[2]April testified that
she knew it was Appellant because his name appeared on the caller
identification feature of Williams=s phone and because
Williams had Appellant on speaker phone, and Appellant has a distinctive voice.





[3]The jury charge
included an accomplice-witness court instruction regarding Joshua Williams=s testimony.  Approximately two weeks before Appellant=s trial, Williams
pleaded guilty to burglary with intent to commit arson. The trial court
deferred adjudication in his case and placed him on community supervision for
ten years. 





[4]A person acts as a
party to the commission of an offense if he acts with intent to promote or
assist the commission of the offense and Asolicits, encourages, directs, aids, or
attempts to aid the other person to commit the offense.@  Tex. Penal Code Ann. '
7.02(a).  A party is criminally
responsible for the offense although committed by another person.  Id.





[5]Because Appellant
argues that article 33.03 is more protective of his rights than the relevant
constitutional provisions and because he does not argue that any of the three
provisions require a different analysis, we address only Appellant=s statutory
complaint.





[6]In Adanandus, the court of criminal appeals held:

 

Appellant=s absence for part of
the voir dire examination was essentially Aundone@ due to
re-examination in appellant=s presence of the
eight vernirepersons that had been voir dired in his absence.  Because appellant was provided the
opportunity to fully voir dire in his presence each
of the venirepersons who were previously voir dired in his absence, the
purposes of the statute were met and no error occurred.

 

See 866
S.W.2d at 217.





[7]Linnell v. State, 964 S.W.2d 1, 2
(Tex. App.—Tyler 1994) (Linnell I) (quoting United States v. Capua,
656 F.2d 1033, 1038 (5th Cir. 1981) (internal quotations omitted)), rev’d, 935 S.W.2d 426 (Tex. Crim. App.
1996) (Linnell II).





[8]Id. at 2
(citing Houston v. State, 743 S.W.2d 751, 753 (Tex. App.—Houston [1st
Dist.] 1987, no pet.)).

 





[9]Capua, 656
F.2d at 1038.





[10]935
S.W.2d at 429–30 (citations omitted).





[11]Tex.
Code Crim. Proc. Ann. art. 33.03 (Vernon 2006).





[12]866 S.W.2d 210, 217
(Tex. Crim. App. 1993), cert. denied, 510 U.S. 1215 (1994).





[13]Id.





          [14]Tex.
Code Crim. Proc. Ann. art. 1.24 (Vernon 2005).

 





[15]Kirkland
v. State, 786
S.W.2d 557, 561 (Tex. App.—Austin 1990, no pet.).





[16]Tex.
Code Crim. Proc. Ann. art. 33.03; see
also Kirkland, 786 S.W.2d at
561.