

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-09-00171-CR

JEFFREY WILLIAM RODEN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## OPINION

------------

A jury convicted Appellant Jeffrey William Roden of burglary of a habitation and assessed his punishment at sixty years' confinement.[1] The trial court sentenced him accordingly. In two issues, Appellant argues that the trial court erred by failing to give an accomplice-witness jury instruction as to witness

---

[1]See Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 2003).

Gerald Smith and by conducting a portion of the voir dire in Appellant's absence. We affirm the trial court's judgment.

## I. Factual Background

On June 27, 2008, Appellant and some friends gathered outside his home in Granbury for an informal party around 8:00 p.m. The party was attended by, among others, Appellant's neighbor, Billy Brecht; Brecht's cousin, Joshua Williams (who lived with Brecht); and Brecht's friend, Gerald Smith. Smith was in town for work and staying with his brother, Ronald Smith. By all accounts, Appellant and Williams began discussing Appellant's next door neighbor, Jerry Beeman, and the fact that he was in jail, that his mobile home was unoccupied, and that his television could be taken and sold. Smith testified that, as they talked, Williams suggested he (Williams) could punch out the glass in one of Beeman's windows with his fists. Smith assumed this was "just a conversation" and responded that, if it were him, he "would throw something through the window." Shortly thereafter, Appellant and Williams walked toward Appellant's house, and Smith heard glass break a few minutes later. When Appellant and Williams returned, Williams stated that Appellant had thrown a brick through Beeman's window. Afterward, Williams returned to Beeman's house several times to break out the remainder of the window, and Smith and Brecht left the party because they did not want to be involved. Tanya Clemens, a neighbor,

testified that around 10:30 that night, she went outside to make a phone call and heard glass breaking. She saw Williams in the area of Beeman's house and then saw Smith walk by and drag Williams away from the area.

Williams testified that he and Appellant broke Beeman's window, and that after Appellant helped him climb through the window, Williams unlocked the front door. Once inside, Williams stole a camera, a revolver, two knives, and a carton of cigarettes. Appellant stole stereo equipment, a DVD player, bottles of liquor, and old coins. Afterward, Williams assisted Appellant in installing the electronics in Appellant's house.

Smith testified that later in the evening, he, Brecht, and a few others stopped by Appellant's house and saw Williams installing a DVD player. Not wanting to get involved, Smith left Appellant's house and began walking back to his brother's. An acquaintance who lived in the neighborhood, Barry Smith, stopped to give him a ride. Barry testified that he picked up Smith around 11:30 p.m. and that they drove for awhile before he dropped off Smith between 12:45 and 1:00 a.m. Barry did not notice Smith carrying anything on his person, and he did not notice that Smith smelled like smoke.

Williams testified that, after he installed the electronics for Appellant and unsuccessfully tried to sell the camera and gun, he returned to Brecht's house. As Williams was talking to Brecht's daughter, April, Appellant called and said he

3

wanted to set Beeman's house on fire.  Williams immediately hung up the phone and told April he had to take care of some business.  Williams then left, and he and Appellant re-entered Beeman's house sometime between 2:00 and 3:00 a.m.  As Williams poured lighter fluid all over the living room, Appellant came from the back of the house and stated, "Let's go."  Williams returned to Brecht's house and told April to tell anyone who asked about his whereabouts either that he was not there or that he was sleeping.

April testified that, while Williams was at her house that evening, Appellant called Williams and asked, "Do you want to burn [Beeman's] house with me?"[2]  A few minutes later, April saw Appellant (with bottles in his hands) and Williams walking toward Beeman's house.  When Williams returned, he stated, "I just watched [Appellant] set [Beeman's] house on fire."  He then instructed April that, if the police asked about him, to say he had been sleeping.

Hood County's deputy fire marshal, Gary Wesson, testified that the fire at the Beeman house was reported at 2:30 a.m.  In his opinion, Appellant and Williams committed the burglary and the arson.

During Appellant's case in chief, his wife Darlene Roden testified that, on the night of the burglary, Williams came to their house with a gun and some

---

[2]April testified that she knew it was Appellant because his name appeared on the caller identification feature of Williams's phone and because Williams had Appellant on speaker phone, and Appellant has a distinctive voice.

4

electronic items and that Smith came by and had a knife. After Appellant told Williams and Smith to leave, Roden went to sleep, and "the next thing [she] knew," Beeman's house was on fire.

Ronald Smith testified that, after his brother left his house the morning after the burglary, his two-year-old daughter approached him holding a straight-edged razor. Ronald also found a knife on the couch where Smith had slept, and Ronald's wallet was missing. Ronald also testified that he and Appellant were one another's best, and only, friends.

At the conclusion of the guilt-innocence phase, the jury found that Appellant "intentionally or knowingly, without the effective consent of Jerry Beeman, the owner thereof, entered a habitation and attempted to commit or committed theft."

## II. Accomplice-Witness Instruction

In his first issue, Appellant contends that the trial court erred by denying his request for an accomplice-witness jury instruction regarding Gerald Smith's testimony.[3]

---

[3] The jury charge included an accomplice-witness court instruction regarding Joshua Williams's testimony. Approximately two weeks before Appellant's trial, Williams pleaded guilty to burglary with intent to commit arson. The trial court deferred adjudication in his case and placed him on community supervision for ten years.

## A. Applicable Law

A person who is complicit in a crime and who testifies against another is an accomplice witness. *See* Tex. Penal Code Ann. § 7.02(a) (Vernon 2003) (the law of parties);[4] Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005) ("the accomplice-witness rule"). Under the accomplice-witness rule, a conviction cannot be secured upon an accomplice's testimony unless corroborated by other evidence tending to connect the defendant to the offense. Tex. Code Crim. Proc. Ann. art. 38.14; *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App.), *cert. denied*, 552 U.S. 1028 (2007).

A witness may be an accomplice either as a matter of law or as a matter of fact, and the evidence in each case determines what jury instruction, if any, should be given. *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1287 (2007). If the evidence is clear that the witness is an accomplice as a matter of law, *e.g.*, the witness has been, or could have been, indicted for the same or lesser-included offense, the trial court must instruct the jury on the law of accomplice-witness testimony. *Id.* at 747–48. If there is conflicting evidence whether a witness is an accomplice, the court should submit

---

[4]A person acts as a party to the commission of an offense if he acts with intent to promote or assist the commission of the offense and "solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code Ann. § 7.02(a). A party is criminally responsible for the offense although committed by another person. *Id.*

the question to the jury inquiring whether the jury finds that the witness is an accomplice as a matter of fact. *Id.* at 748. If there is no evidence that a witness is an accomplice, the trial court is not obligated to provide an accomplice-witness instruction. *Id.*

In determining whether a person is an accomplice, either as matter of fact or of law, courts may look to events occurring before, during, and after the commission of the offense including actions that show an understanding and common design to do a certain act. *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986), *cert. denied*, 492 U.S. 925 (1989); *see Druery*, 225 S.W.3d at 498 (holding that an accomplice participates with the defendant before, during, or after the commission of a crime and acts with the required mental state). A person is not an accomplice unless he affirmatively assists in the commission of the offense. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004); *Kutzner v. State*, 994 S.W.2d 180, 187 (Tex. Crim. App. 1999). Mere presence during the crime, knowledge about the crime and failure to disclose it, or even concealment of the crime is not sufficient to render a person an accomplice witness. *Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1102 (2000); *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998).

7

## B. Application of Law to Facts

Appellant argues that Smith was an accomplice because, when Williams talked about punching his fist through a glass window, Smith expressed the opinion that "if it was me, I would throw something through the window." As further evidence, Appellant points to (1) Tanya Clemens's testimony that she saw Smith drag Williams away from Beeman's house after she heard the sound of breaking glass; (2) various witnesses' testimony that Smith and Williams were in Appellant's house with the stolen items; (3) Darlene Roden's testimony that Smith brought a knife to Appellant's house after the burglary; and (4) the testimony of Smith's brother that he found a knife where Smith had slept the night before. Although Appellant maintains that Smith "could have been prosecuted for a crime arising out of the incident," he does not specify an offense.

None of the evidence establishes that Smith, acting with the required culpable mental state, actively participated with Appellant before, during or after the commission of the burglary of Beeman's home or that he acted in a manner to promote the burglary or the arson. Williams testified that Smith did not help break Beeman's window, that Smith left the party when he realized Williams and Appellant had done so, and that Williams and Appellant were the only ones who entered Beeman's home, stole property, and set the house on fire. Smith testified that he did not participate in the arson or the theft and that neither

8

Appellant nor Williams gave him any stolen property the night of the burglary. As the State points out, none of the witnesses identified any knife that Smith possessed as stolen during the burglary. Deputy Fire Marshal Wesson testified that, in his opinion, Appellant and Williams committed the burglary.

We therefore hold that the trial court did not err by refusing to submit an accomplice-witness instruction regarding Gerald Smith because there was no evidence that he was an accomplice as a matter of law or as a matter of fact. We overrule Appellant's first issue.

### III. Voir Dire

In his second issue, Appellant contends that the trial court erred by conducting a portion of his voir dire outside his presence in violation of his rights under the federal and state constitutions and article 33.03 of the code of criminal procedure. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 33.03 (Vernon 2006).

### A. Procedural Background

On the morning of May 4, 2009, the trial court called a single venire panel from which a jury in an unrelated case was to be chosen in the morning, and Appellant's jury was to be chosen in the afternoon. Appellant's counsel objected to the State questioning any morning panel members who would later sit on Appellant's panel. The trial court noted the objection but proceeded. One of

9

the prosecutors in Appellant's case participated in the morning voir dire. The State does not dispute that neither Appellant nor his counsel attended the morning voir dire.

Appellant was present during the afternoon while his counsel and the State conducted a complete voir dire of the panel members. All the afternoon panel members had attended the morning session. After the jury in Appellant's case was selected, Appellant's counsel objected and moved to strike "the jury panel in its entirety," stating that the seated venirepersons had been examined in the morning outside Appellant's presence; that neither he nor Appellant had heard, or were given the opportunity to respond to, the panel members' answers; and that the members' answers would not be included as part of his trial record. The trial court overruled the objection, and Appellant's trial began the next morning.

## B. Applicable Law

The right of confrontation under article I, section 10 of the Texas constitution and the Sixth Amendment to the United States Constitution includes "'the absolute requirement that a criminal defendant who is threatened with loss of liberty be physically present at all phases of proceedings against him, . . . absent a waiver of that right through defendant's own conduct[.]'" *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985) (quoting *Baltierra v. State*, 586 S.W.2d 553 (Tex. Crim. App. 1979)). Article 33.03 of the code of criminal procedure provides that, in all

10

felony prosecutions, "the defendant must be personally present at trial" unless he "voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected[.]"   Tex. Code Crim. Proc. Ann. art. 33.03.

### C. Application of Law to Facts

Appellant maintains that Article 33.03 codified his constitutional right to confrontation and that this article is "even more protective of [his] rights than the constitutional provisions because the right to be present cannot be waived before the jury is selected."[5]   Building on this contention, Appellant argues that a portion of his voir dire was held outside his presence because the State developed a relationship with the prospective jurors during the morning voir dire session that he did not observe.

Consistent with our previous holdings, we reject Appellant's premise that the morning voir dire session of another individual, in which veniremembers and one member of the prosecution team in Appellant's case participated, constituted voir dire in Appellant's case for the purposes of article 33.03.   *See Cuevas v. State*, No. 02-08-00014-CR, 2008 WL 4531702, at *2 (Tex. App.—Fort Worth Oct. 9, 2008, pet. ref'd) (mem. op., not designated for publication); *Ballard v. State*, No.

---

[5]Because Appellant argues that article 33.03 is more protective of his rights than the relevant constitutional provisions and because he does not argue that any of the three provisions require a different analysis, we address only Appellant's statutory complaint.

11

02-07-00027-CR, 2008 WL 204270, at *1 (Tex. App.—Fort Worth Jan. 24, 2008, pet. dism'd) (mem. op., not designated for publication); *Lain v. State*, No. 02-06-00325-CR, 2007 WL 2331017, at *2–3 (Tex. App.—Fort Worth Aug. 16, 2007, pet. ref'd) (mem. op., not designated for publication).  When the trial court commenced voir dire in Appellant's case in the afternoon, Appellant and his counsel were present and had full opportunity to voir dire each panel member. *See Ballard*, 2008 WL 204270, at *1 (citing *Adanandus v. State*, 866 S.W.2d 210, 217 (Tex. Crim. App. 1993), *cert. denied*, 510 U.S. 1215 (1994)); *Lain*, 2007 WL 2331017, at *3 (citing *Adanandus*).[6]

Appellant cites *Bledsoe v. State* for its harmless error analysis.  *See* 936 S.W.2d 350, 351 (Tex. App.—El Paso 1996, no pet.).  Notably, the *Bledsoe* court held that article 33.03 was violated where the defendant was absent (for unspecified reasons) for the entirety of his trial's jury selection process.  *Id.* Because Appellant was present for the entirety of his trial's voir dire, we hold that

---

[6]In *Adanandus*, the court of criminal appeals held:

> Appellant's absence for part of the voir dire examination was essentially "undone" due to re-examination in appellant's presence of the eight vernirepersons that had been voir dired in his absence. Because appellant was provided the opportunity to fully voir dire in his presence each of the venirepersons who were previously voir dired in his absence, the purposes of the statute were met and no error occurred.

*See* 866 S.W.2d at 217.

12

the statute was not violated.  Thus, we do not address the harm analysis in *Bledsoe*.  We overrule Appellant's second issue.

## IV.  Conclusion

Having overruled Appellant's two issues, we affirm the trial court's judgment.


ANNE GARDNER
JUSTICE

PANEL:   LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DAUPHINOT, J. filed a concurring opinion.

PUBLISH

DELIVERED:   February 24, 2011



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO.   02-09-00171-CR

JEFFREY WILLIAM RODEN                                                      APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## CONCURRING OPINION

----------

I agree with the majority's holding that the trial court did not err by refusing to instruct the jury that Gerald Smith was an accomplice as a matter of law or by refusing to submit the issue to the jury of whether he was an accomplice as a matter of fact.  I also agree with the ultimate outcome of the opinion, but I write separately to address a pervasive problem raised by Appellant.  It is a problem

that has been addressed by federal courts but that continues as routine practice in some jurisdictions—selecting more than one jury from a single venire.

As our sister court in Tyler reminded us, "Although[] the selection of more than one jury from a venire panel[] has been characterized as a fundamental defect in the trial proceedings, it has never been held to be of constitutional dimension."[7] It is common knowledge that "[b]ecause many Texas counties have small populations, interim jury service is allowed."[8] Thus, it is well settled that the selection of more than one jury from a venire panel is a necessary and accepted practice in some counties. In many small counties, a single jury panel is brought in for voir dire. That panel is the jury panel for more than one case, and they sit through the voir dire for all of the cases. Customarily, the prosecutor questions the jury about the issues in each of the cases to be tried, but the lawyer representing the defendant participates only in the voir dire touching on the issues of that defendant's case. This was the manner in which the voir dire was conducted in the case now before this court.

As the Fifth Circuit has explained, the practice of choosing more than one jury from a single venire is a fundamental defect: "Our refusal to denominate

---

[7] *Linnell v. State,* 964 S.W.2d 1, 2 (Tex. App.—Tyler 1994) (*Linnell I*) (quoting *United States v. Capua*, 656 F.2d 1033, 1038 (5th Cir. 1981) (internal quotations omitted)), *rev'd*, 935 S.W.2d 426 (Tex. Crim. App. 1996) (*Linnell II*).

[8] *Id.* at 2 (citing *Houston v. State*, 743 S.W.2d 751, 753 (Tex.

2

such claims as constitutional does not render them insignificant."[9]  And as the

Texas Court of Criminal Appeals explained in *Linnell II*,

> Although in many jurisdictions repeat jury service is inevitable, there is a key difference between *prior* jury service and *interim* jury service:  the difference is the ability of the parties to question veniremembers about the former but not the latter.  As the Fifth Circuit reasoned:  "The vice of (interim jury service) is that it forces counsel to act on information that must necessarily be obsolete by the time of trial."

> . . . .

> In the instant case the parties were required to conduct voir dire and exercise their peremptory strikes *before* the interim jury service.  By picking two juries from the same venire, it was impossible to question the interim jurors concerning jury service which they had yet to experience.  No amount of voir dire can determine the effects of sitting in a trial which has not yet taken place.  And, as the Courts in *Kirkland* and *Jefferson* noted, there exists a "heightened danger of prejudice" with interim jury service.  Consequently, we hold that interim jury service denies the parties the intelligent exercise of their peremptory challenges.

> We understand that repeat jury service may be necessary in some jurisdictions because of their small population.  However, even in those jurisdictions the constitutional right to counsel encompasses the right to question prospective jurors in order to intelligently exercise peremptory challenges.  Therefore, we hold that if the trial judge intends to select more than one jury from a single venire, the veniremembers selected to serve as jurors must be

---

App.—Houston [1st Dist.] 1987, no pet.)).

[9]*Capua*, 656 F.2d at 1038.

excluded from the venire from which the other jurors will be selected.[10]

Appellant argues that the trial court erred by conducting voir dire in this manner because it violated the requisites of article 33.03 of the Texas Code of Criminal Procedure, which provides that a defendant "must be personally present at the trial."[11]  The State argues that "the trial" refers only to a defendant's own trial, and not the trial of another defendant who shared the same jury panel.

The State also argues that the morning session of voir dire was for a different defendant and was therefore not part of Appellant's trial and that the trial court consequently did not err by conducting the morning session outside Appellant's presence.  The State alternatively argues that even if voir dire were erroneously conducted outside Appellant's presence, any error would be harmless because the panel would be reexamined with him present.

The State relies on *Adanandus v. State*.[12]  In *Adanandus*, the defendant voluntarily absented himself from the first voir dire in his case, but, according to the State, this "absence . . . was . . . 'undone' [by a] re-examination in [his]

---

[10]935 S.W.2d at 429–30 (citations omitted).

[11]Tex. Code Crim. Proc. Ann. art. 33.03 (Vernon 2006).

[12]866 S.W.2d 210, 217 (Tex. Crim. App. 1993), *cert. denied*, 510 U.S. 1215 (1994).

4

presence of [all those] voir dired in his absence."[13]   The State argues that because Appellant had an opportunity to fully voir dire in his presence everyone who had been questioned during the previous voir dire, the purposes of the statute were met, again relying on *Adanandus*.

This is a difficult issue because it requires balancing the limitations of resources in small counties against defendants' constitutional rights.   Allowing the State's prosecutor to participate in a voir dire examination from which the defendant is barred from participating appears to give the State an advantage. The State has the opportunity to observe the venire members' reactions to questions that may not be asked when the defendant is present.   The State also has the opportunity to watch the body language of the members of the venire at a time denied to the defendant.   Additionally, the jury becomes better acquainted with the representative of the State.   Anyone who has ever tried a lawsuit knows that it is very important to bond with the jurors who eventually end up on the jury.

At the same time, especially if a defendant is in jail, it taxes the resources of the small county to allow an incarcerated defendant to watch someone else's voir dire without allowing the jury to see the defendant in handcuffs or shackles or specifically supervised by a bailiff or sheriff's deputy.   Personnel resources of the

---

[13]*Id.*

county are strained by requiring supervision of more than one defendant at the same time.

In the case now before this court, Appellant was not in jail at the time of voir dire but had been released after posting bail. Trials are public.[14] Under normal circumstances, any person is free to attend court and to watch and listen to voir dire. Appellant, however, suggests that he did not attend voir dire of the panel for the case preceding his, and the record does not reflect that Appellant or his counsel attended court during the voir dire of the panel for the case preceding his. Nothing in the record suggests that Appellant was prevented from attending the voir dire, although he would not have had the opportunity to interact with the potential jurors at the same time that the State was speaking with them and establishing a relationship with them.

As the Texas Court of Criminal Appeals has stated,

[S]imilar jury selection procedures have been characterized as 'a fundamental defect in the trial proceedings' but nevertheless not of constitutional dimension. . . . Claims of administrative efficiency, convenience and necessity as justification for interim jury service in similar cases have a thin veneer indeed. Trial judges should make every effort to avoid such procedure.[15]

It would be better practice to have a completely separate venire for each voir dire session, but small counties often do not have that resource. It would be

_____

[14]Tex. Code Crim. Proc. Ann. art. 1.24 (Vernon 2005).

[15]*Kirkland v. State,* 786 S.W.2d 557, 561 (Tex. App.—Austin 1990, no pet.).

6

better to allow the defendant and his counsel to be present during all discussions with the venire from which the defendant's jury will be selected. Again, small counties do not have those resources. Yet article 33.03 requires that he be present.[16]

Although the Fifth Circuit has called this practice a fundamental defect, it does not offend the constitution of either the United States or of Texas. Consistent with the Fifth Circuit's holding, Appellant has not raised a constitutional challenge to the procedure of calling a single venire to be questioned regarding more than one case. He has raised only a statutory complaint. Absent a showing that a juror is disqualified, whether she was disqualified in an earlier voir dire or for some other reason, or that a juror served on another jury chosen from the same venire, the procedure of choosing more than one jury from a single panel, while not favored, is not necessarily error when the defendant is free to be present in the courtroom during voir dire of the panel for other trials.

In the case now before this court, the evidence of Appellant's guilt was overwhelming, and it cannot be said that the trial court's calling a single venire from which both the jury for his trial and the jury for the case preceding his were

---

[16]Tex. Code Crim. Proc. Ann. art. 33.03; *see also Kirkland,* 786 S.W.2d at 561.

chosen had a substantial and injurious effect or influence on the jury's verdict. There is no evidence that Appellant was prevented from being present during the voir dire for the preceding case, nor is there evidence that the voir dire in which Appellant did participate was not sufficient to provide the information he needed. Nor is there any evidence that any juror was disqualified or struck for cause either during the first voir dire or as a result of anything that occurred because of participating in the first voir dire or that any juror served on the trial preceding Appellant's trial. I would therefore hold that Appellant has not established that the trial court abused its discretion in allowing more than one jury to be chosen from a single venire.

Because I agree with the Fifth Circuit that this practice of choosing multiple juries from a single venire, with only one party present and participating in the entire voir dire process, has serious and fundamental flaws, I respectfully concur in the result only regarding this issue.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: February 24, 2011

8